Carlos Alberto BALLBE, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 89–5108
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Oct. 18, 1989.

Antoinette J. Rizzi, Washington, D.C., for petitioner.

Donald Couvillon, Office of Immigration Litigation, Washington, D.C., Allen W. Hausman, Linda W. Wendtland, Office of Immigration Litigation, Miami, Fla., for respondent.

Before TJOFLAT, Chief Judge, FAY, Circuit Judge, and HILL, Senior Circuit Judge.

PER CURIAM:

Petitioner Carlos Alberto Ballbe appeals from the August 3, 1988 Board of Immigration Appeals' decision which dismissed Ballbe's appeal from the immigration judge's ruling that Ballbe is deportable under section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11) (1988) and ineligible for a waiver of inadmissibility under section 212(c) of the INA, 8 U.S.C. § 1182(c) (1988). Ballbe argues that the immigration judge erred in computing the seven-year period of "lawful unrelinquished domicile" in the United States required for discretionary relief under section 212(c) of the INA, 8 U.S.C. § 1182(c) (1988). Ballbe further contends that the immigration judge acted arbitrarily and capriciously in ruling that even if Ballbe was eligible, he would not be entitled to a waiver of inadmissibility. For the reasons set forth below, we AFFIRM the Board of Immigration Appeals' dismissal of appeal from the decision of the immigration judge.

## I. BACKGROUND

Carlos Ballbe is a native of Argentina. He has a wife, who is a United States citizen, and four resident and/or citizen children, ranging from twenty-six to twenty-eight years in age. While he resided in Argentina, Ballbe was a lawyer and a judge. On May 12, 1977, when he was 44 years old, Ballbe lawfully entered the United States as a permanent resident. Since establishing his domicile in the United States, Ballbe has owned and operated several businesses involving the importation and exportation of motor vehicles.

On May 18, 1983, a federal grand jury returned an indictment charging Ballbe with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (1986). Ballbe was convicted of this crime on September 19, 1983, and was sentenced to two years incarceration followed by a special parole term of three years. He served seventeen months.

Shortly after Ballbe's conviction, on November 2, 1983, the INS issued an order to show cause charging that Ballbe's conviction subjected him to deportation under section 241(a)(11) of the INA, 8 U.S.C. § 1251(a)(11) (1988). At the time the INS issued the order to show cause, Ballbe was still incarcerated. The INS mailed the order to show cause to Ballbe in care of the Federal Correctional Institution in Ashland, Kentucky. On October 19, 1984, after serving his prison term, Ballbe was released into the custody of the INS. On October 24, 1984, the order to show cause was filed with the office of the immigration judge.

On May 31, 1985, Ballbe attended a hearing in front of an immigration judge and plead not guilty to the deportation charge. He also challenged the order to show cause on jurisdictional grounds, namely improper service. The immigration judge ruled that Ballbe had adequate notice of the hearing and had adequate time to prepare his case, as Ballbe admitted to becoming aware of the order to show cause in May, 1984, and his hearing on the merits was not until June 17, 1985. The judge found further that Ballbe appeared in court with a copy of the order to show cause in hand. The BIA upheld the immigration judge's ruling.

Additionally, in the June 17, 1985 hearing, Ballbe challenged an allegation in the order to show cause which stated that Ballbe's most recent date of entry into the United States was January 8, 1983. After evidence was presented indicating that the Ballbe's last date of entry was February 1, 1983, the INS moved to make a pen and ink amendment to the order to show cause. The immigration judge denied the motion, but ruled that the INS could make a formal amendment. The amended order to show cause was issued on June 17, 1985 and contained the same allegations as the original order to show cause except for the most recent date of entry. Additionally, on June 17, 1985, Ballbe filed an application for a section 212(c) discretionary waiver of inadmissibility.

The hearing resumed on July 24, 1985, and Ballbe argued that the amended order to show cause should supersede the original order to show cause so that the section 212(c) seven-year period could be calculated from the date of the amended order to show cause. At the hearing the immigration judge ruled that the "amended order to show cause is the order to show cause that must be established for purposes of deportation and all other purposes." (R. 1–119). Shortly after this ruling, Ballbe conceded deportability under section 241(a)(11) of the INA, 8 U.S.C. § 1251(a)(11) (1988), and relied exclusively on the section 212(c) waiver of inadmissibility to provide him an opportunity to remain in the United States. The immigration judge permitted both parties to present evidence regarding the section 212(c) claim for discretionary relief.

The judge's final decision stated that for purposes of section 212(c) relief, the date of issuance of the original order to show cause would control. The judge reasoned that because 8 C.F.R. § 242.16(d) (1987), and the case law arising from it, provides for amendments of both the charges and the factual allegations in an order to show cause, the amendment here did not change the issuance date for purposes of calculating the requisite seven-year period. Further, the judge found that the amendment in this instance was hypertechnical and had no effect on the proceedings. The judge therefore held that Ballbe was not eligible for a waiver of inadmissibility because the original order to show cause was issued before Ballbe had maintained a lawful unrelinquished domicile in the United States for seven years.

Ballbe appealed the immigration judge's decision to the BIA, and the BIA dismissed the appeal. The BIA used much the same reasoning as the immigration judge to find that Ballbe had not fulfilled the seven-year requirement for section 212(c) discretionary relief. The BIA further held that even if Ballbe was eligible for a waiver of inadmissibility, it would deny such relief in its discretion. The BIA noted that while the evidence established strong equities in favor of Ballbe, the evidence further revealed that an exercise of discretion would not be warranted.

## II. DISCUSSION

Ballbe urges us to overturn the BIA's decision on several grounds. First, Ballbe argues that because the INS failed to properly serve Ballbe with the order to show cause issued on November 2, 1983, we must use the date of issuance of the amended order to show cause (June 17, 1985), which was properly served, for purposes of determining his eligibility for section 212(c) relief. Second, Ballbe contends that the amended order to show cause superseded the original order to show cause, and therefore we must look to the date of the amended order to show cause in calculating the requisite seven-year period. Third, Ballbe asserts that because our decision in *Marti–Xiques v. Immigration & Naturalization Service*, 741 F.2d 350 (11th Cir.1984), was rendered after the INS issued the original order to show cause in this case, it should not be applied to Ballbe. Finally, Ballbe urges us to reconsider and re-evaluate the ruling in *Marti–Xiques*, to the extent that it directs us to utilize the date of issuance of the order to show cause in determining a deportable alien's eligibility for section 212(c) relief.

## A. SERVICE OF THE ORIGINAL ORDER TO SHOW CAUSE

■ Ballbe asserts that pursuant to this court's holding in *Marti–Xiques*, in order for the seven-year period to toll, deportation proceedings must "commence" within the meaning of 8 C.F.R. § 242.1(a) (1987). In 1983, 8 C.F.R. § 242.1(a) required both issuance and service of the order to show cause for commencement of deportation proceedings. Ballbe contends that since the November 2, 1983 order to show cause was issued but not properly served, Ballbe's deportation proceedings never commenced. Hence, Ballbe argues that the June 17, 1985 order to show cause, which was issued and served, commenced the proceedings and should provide the cutoff date for his eligibility for a discretionary waiver of inadmissibility.

Ballbe's argument fails insofar as Ballbe mistakenly interprets the *Marti–Xiques* decision to state that we must use the date of commencement of the deportation proceedings, as contemplated by 8 C.F.R. § 242.1(a), rather than the date of issuance of the order to show cause. Although the court stated that "the most viable and fair cutoff date is the date upon which the INS commences the deportation proceedings, *i.e.* when the order to show cause is issued," the court reasoned that "fixing the cutoff date as of the time of the issuance of the show cause order ... avoids the problem of tying the accrual of § 212(c)'s seven-year period to the quirks and delays of the administrative and judicial processes." 741 F.2d at 355. The court then concluded that the date for determining an alien's eligibility for discretionary relief is the date on which the order to show cause is issued. If we infer that the *Marti–Xiques* panel intended the cutoff date to be the date of both issuance and service, we would be ignoring its admonition to sever the cutoff date from the procedural quirks of the judicial system. We believe that in most instances the date of issuance will be most certain, as it appears plainly on the face of the order to show cause. Furthermore, if we were to adopt Ballbe's interpretation of *Marti–Xiques*, we would be faced with another problem—whether to use the date of issuance or the date of service as the seven-year cutoff date. In order to avoid entangling the cutoff date with judicial processes, and concomitantly to avoid jeopardizing the certainty of such date, we hold, as we did in *Marti–Xiques*, that the date to be used in determining whether an alien has maintained a lawful unrelinquished domicile for purposes of determining the alien's eligibility for section 212(c) relief is the date of issuance of the order to show cause.

## B. SUBSTITUTION OF THE AMENDED ORDER FOR THE ORIGINAL ORDER

■ Ballbe contends that even if we find that service of the original order was proper or unnecessary, the INS terminated proceedings under the original order and reinitiated them under the amended order, therefore establishing a new cutoff date for purposes of § 212(c) relief. Ballbe argues that the amendment regarding his last date of entry into the United States advanced the cutoff date from November 2, 1983 to June 17, 1985.

We agree with the immigration judge and the BIA that the amendment of the factual allegation regarding Ballbe's last date of entry into the United States did not terminate the proceeding under the original order to show cause. 8 C.F.R. § 242.16(d) (1987) provides in pertinent part:

> The Service may at any time during a hearing lodge additional charges of deportability, including factual allegations, against the respondent.

This section allows the INS to amend its factual allegations to conform to the evidence presented at the deportation hearing. *See Forstner v. Immigration & Naturalization Service*, 579 F.2d 506, 508 (9th Cir. 1978), *cert. denied*, 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 36 (1979); *Yam Sang Kwai v. Immigration & Naturalization Service*, 411 F.2d 683, 687–688 (D.C.Cir.), *cert. denied*, 396 U.S. 877, 90 S.Ct. 148, 24 L.Ed.2d 135 (1969); *Rassano v. Immigration & Naturalization Service*, 377 F.2d 971 (7th Cir.1966). Nevertheless, Ballbe argues that while the INS was free to amend the order to show cause during the deportation hearing, it risked extending the section 212(c) cutoff date.

We do not accept Ballbe's position. In this case, the amendment was immaterial to the charge of deportability. The immigration judge found that even if Ballbe's last entry into the United States was on January 8, 1983, as originally alleged, he could have been deported. Additionally, Ballbe never complained that he lacked knowledge of the substantive charges of deportability against him. Ballbe's only contention regarding the charges of deportability was that the allegations in the order to show cause inaccurately reflected his last date of entry into the United States. Ballbe certainly should have known better than anyone else when he last entered the United States. Thus, when the INS

amended the order to show cause, Ballbe should not have been surprised or prejudiced by the new information. Hence, Ballbe can not now assert that the date of issuance of the original order to show cause has been superseded by the date of issuance of the amended order to show cause based upon an amendment immaterial to the substantive charges of deportability, and an amendment the substance of which Ballbe knew beforehand. *See Yam Sang Kwai*, 411 F.2d at 687–688. Further, to allow an extension of the cutoff date every time an amendment is made would contradict our concern for certainty in determining eligibility for a section 212(c) discretionary waiver of inadmissibility. *See Marti–Xiques*, 741 F.2d at 355.

### C. APPLICATION OF *MARTI–XIQUES*

■ Ballbe urges that since *Marti–Xiques* was decided after the INS issued the November 2, 1983, order to show cause, the holding should not be applied to this case. Generally, "[e]very case of first impression has a retroactive effect, whether the new principle is announced by a court or by an administrative agency." *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). However, in deciding whether to apply a judicial decision retroactively, the Supreme Court has usually considered three factors: whether the decision to be applied nonretroactively establishes a new principle of law, either by overruling precedent or deciding an issue of first impression; whether the retrospective operation will retard or further the rule in question based upon the merits of each case; and whether the retrospective application will produce substantial inequitable results. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).

After consideration of these factors, we find that the BIA did not err in applying *Marti–Xiques* to the instant case. The *Marti–Xiques* decision did not overrule any clear existing precedent within this circuit regarding the cutoff date for section 212(c) relief. In fact, the court recognized that a number of viable alternatives for determin-

ing the cutoff date existed. *Marti–Xiques*, 741 F.2d 352–355. Had clear precedent been established when the panel rendered the *Marti–Xiques* decision, the panel would have been bound to apply it. *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

Moreover, applying *Marti–Xiques* to this case will not result in substantial inequities to Ballbe. The record establishes that Ballbe was fully prepared to argue for discretionary relief at his hearing. He admitted to learning of the order to show cause over a year before his deportation hearing. Further, the immigration judge allowed Ballbe to present a substantial amount of evidence to establish his entitlement to discretionary relief. Additionally, Ballbe can not legitimately argue that his reliance on prior case law caused him to abandon his efforts in establishing his eligibility for section 212(c) relief. Nothing in the record indicates that Ballbe, in reliance on existing precedent, took measures to relinquish his United States domicile after his lawful entrance in 1977. Rather, the record indicates that throughout his hearing, Ballbe was concerned about, and prepared to contest, the application of *Marti–Xiques* to his case. Since Ballbe did not detrimentally alter his position or forego any available opportunities in reliance on case law existing on or before November 2, 1983, application of *Marti–Xiques* will not administer him substantial inequities.

Finally, applying the rule promulgated in *Marti–Xiques* to the instant case will further its purposes. The policy behind establishing the date of issuance of the order to show cause as the terminal date of the requisite seven-year period is to make eligibility for discretionary relief readily ascertainable. 741 F.2d at 355. If we do not apply the rule to this case, we will call into question the relevant cutoff date to be applied in all cases in which an order to show cause was issued prior to the release of the *Marti–Xiques* decision, and consequently retard the effect of the rule.

### D. RECONSIDERATION OF *MARTI–XIQUES*

■ The Eleventh Circuit has held that no prior decision of the circuit will be over-

ruled unless it is overruled by the court sitting en banc. *Bonner v. City of Pritchard, Ala.,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). Therefore, we have no power to reconsider our holding in *Marti–Xiques. See Garcia–Mir v. Meese,* 788 F.2d 1446, 1449 n. 3 (11th Cir.), *cert. denied sub nom. Ferrer–Mazorra v. Meese,* 479 U.S. 889, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986).

### III. CONCLUSION

Following *Marti–Xiques,* we hold that Ballbe's claim for discretionary relief under section 212(c) of the I.N.A., 8 U.S.C. § 1182(c) (1988) is barred because Ballbe failed to show that he had maintained lawful unrelinquished domicile in the United States for seven years prior to issuance of the order to show cause. Since Ballbe is ineligible for discretionary relief, we need not consider the merits of his claim. Accordingly, we AFFIRM the Board of Immigration Appeals' decision to dismiss Ballbe's appeal from the decision of the immigration judge.