Oswaldo JARAMILLO, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE and The Executive Office For Immigration Review, Respondents.

No. 92–4332.

United States Court of Appeals,
Eleventh Circuit.

Sept. 14, 1993.

---

Ira J. Kurzban, Helena Tetzeli, Kurzban Kurzban & Weinger, P.A., Miami, FL, for petitioner.

Donald A. Couvillon, Richard M. Evans, Donald E. Keener, Robert Kendall, Jr., OIL, Civ. Div. Dept. of Justice, Washington, DC, for respondents.

Before TJOFLAT, Chief Judge, FAY, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, and CARNES, Circuit Judges.

CARNES, Circuit Judge:

This appeal involves § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c), which authorizes the Attorney General to grant an otherwise deportable alien discretionary relief from deportation, but only if the alien's period of lawful unrelinquished domicile in this country is seven years or more. The Attorney General has delegated that authority to Immigration Judges, whose decisions are reviewed by the Board of Immigration Appeals ("the Board").

See 8 C.F.R. §§ 212.3(e), 3.1(b)(2). The Board in this case held that Oswaldo Jaramillo was ineligible to be considered for § 212(c) relief, because he did not meet the seven-year lawful unrelinquished domicile requirement. Jaramillo concedes that he is deportable but seeks review of the Board's holding that he did not meet the seven-year requirement for discretionary relief consideration.

■ The issue presented is at what point during deportation proceedings the status of an alien lawfully admitted for permanent residence ends so that the alien is no longer accruing lawful unrelinquished domicile time for § 212(c) purposes. Giving deference to the interpretation of the statute by the Board and aligning ourselves with two other circuit courts of appeal that have addressed the issue, we hold that the point during the deportation process at which a resident alien's lawful domicile ends for § 212(c) purposes is when the deportation order becomes administratively final. That will be the date the Board renders its decision on appeal or certification, or the date an appeal is waived, or the date that time for appeal expires with none taken. Because Jaramillo had accrued seven years of lawful unrelinquished domicile before the order of deportation became administratively final, we reverse the Board's decision that he is not entitled to be considered for § 212(c) relief.

BACKGROUND

Oswaldo Jaramillo, a citizen of Colombia, entered the United States as a lawful permanent resident in 1974. He was convicted in 1976 of conspiracy to import cocaine and served a sentence of one year and one day followed by a probationary period. Jaramillo's conviction rendered him subject to deportation. 8 U.S.C. § 1251(a)(11) (1970). In 1979, when Jaramillo had been a lawful permanent resident of the United States for five years, the INS began deportation proceedings against him by issuing a show cause order. That order was mailed to Jaramillo, but was returned to the INS as undeliverable by the postal service. Nothing happened about the show cause order until Jaramillo, unaware that the INS was seeking to deport

him, sought naturalization. During the course of naturalization proceedings, the show cause order was discovered in 1984. As a result of that discovery, a deportation hearing was scheduled. The INS did not serve Jaramillo with the show cause order until he appeared for his deportation hearing in 1984, by which time he had been a lawful permanent resident of this country for ten years.

At the deportation hearing, Jaramillo informed the Immigration Judge of his intention to seek relief under INA § 212(c), and he filed a timely application for relief under that section, which provides:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General ....

8 U.S.C. § 1182(c). Under case law, discretionary relief under § 212(c) has been extended to resident aliens. *E.g.*, *Melian v. INS*, 987 F.2d 1521, 1523 (11th Cir.1993); *Francis v. INS*, 532 F.2d 268, 272–73 (2d Cir.1976). The INS does not question that extension in this case.

The Attorney General is responsible for the administration of laws concerning immigration and naturalization, including the adoption of necessary regulations, and has delegated those responsibilities to the Commissioner of the INS. 8 U.S.C. § 1103(a), (b); 8 C.F.R. § 2.1. Immigration Judges conduct hearings on show cause orders in deportation proceedings, *see* 8 C.F.R. §§ 3.10, 242.8(a), and the Board of Immigration Appeals has appellate jurisdiction over decisions by Immigration Judges, *id.* § 3.1(b)(2). A deportation order issued by an Immigration Judge becomes final upon decision of the appeal by the Board, upon waiver of appeal, or upon expiration of the time allotted for an appeal when no appeal is taken. *Id.* § 243.1. The Board's decision is administratively final, but review by the

United States Circuit Court of Appeals may be sought by petition. *See* 8 U.S.C. § 1105a.

In *In re Lok*, 18 I. & N. Dec. 101, 107 (BIA 1981), *aff'd*, *Lok v. INS*, 681 F.2d 107 (2d Cir.1982), the Board adopted as its official interpretation of § 212(c), a construction under which an alien's period of lawful unrelinquished domicile terminates only upon entry of an administratively final order of deportation. Under the Board's *Lok* rule, Jaramillo would be eligible for consideration for § 212(c) discretionary relief, because his order of deportation did not become final until 1992, eighteen years after he had become a permanent resident. Indeed, at the time Jaramillo applied for § 212(c) relief in 1984, the order of deportation had not become final and he had already been a permanent resident for more than the requisite seven years. Jaramillo would not be eligible for § 212(c) relief if issuance of the show cause order itself served to stop the running of the lawful domicile period, because the order was issued before he had been a resident for seven years. That was the eventual holding of the Board in this case, which felt compelled in cases within this circuit to yield its interpretation of the statute in the face of two contrary decisions of this Court: *Marti–Xiques v. INS*, 741 F.2d 350 (11th Cir.1984), and *Ballbe v. INS*, 886 F.2d 306 (11th Cir.1989), *cert. denied*, 495 U.S. 929, 110 S.Ct. 2166, 109 L.Ed.2d 496 (1990).

After the Board had announced in *Lok* that accrual of lawful residency did not stop until the deportation order became administratively final, this Court decided *Marti–Xiques*. In that case, we rejected the Board's *Lok* interpretation and adopted, instead, the date the show cause order is issued as the cutoff date for accrual of lawful domicile for § 212(c) purposes. *Marti–Xiques*, 741 F.2d at 354–55.[1]

The INS persuaded the Immigration Judge that because this case arose in the Eleventh Circuit, *Marti–Xiques* required

---

1. Although we announced a rule different from the Board's interpretation, the actual result in *Marti–Xiques* was consistent with the Board's position. The alien in that case had been a lawful resident for less than seven years when

the deportation decision became administratively final. *See* 741 F.2d at 351. Thus, he was ineligible for § 212(c) relief under the Board's interpretation as well as under the earlier cutoff rule we adopted.

that the cutoff date be the issuance of the show cause order, notwithstanding the Board's different interpretation of the statute. The Immigration Judge held Jaramillo ineligible for § 212(c) relief solely because of the *Marti–Xiques* decision. Jaramillo appealed to the Board, which reversed. The Board interpreted *Marti–Xiques* as establishing that the commencement of deportation proceedings is the event which stops accrual of lawful residency time, and the Board held that under regulations in effect at the time of the *Marti–Xiques* decision, deportation proceedings did not commence until the show cause order was served as well as issued. *See* 8 C.F.R. § 242.1(a) (1984). Because service did not occur in this case until after Jaramillo had been a lawful resident for more than seven years, the Board concluded that he was eligible for § 212(c) consideration.

After the Board reversed and remanded this case to the Immigration Judge, we decided *Ballbe v. INS*, which reiterated and clarified the rule of law set forth in *Marti–Xiques*. We held in *Ballbe* that the date lawful residency ceases to accrue for § 212(c) purposes is the date that the show cause order is issued, not the date it is served. 886 F.2d at 309. The INS then used our *Ballbe* decision to argue before the Immigration Judge in this case that notwithstanding the Board's mistaken reading of *Marti–Xiques*, it was now clear that for § 212(c) purposes issuance of the show cause order was the crucial date in deportation proceedings undertaken in the Eleventh Circuit. Under that rule, Jaramillo was ineligible for § 212(c) relief because at the time the show cause order was issued, he had been in the United States as a lawful permanent resident for only five years. The Immigration Judge agreed with the INS, and applied *Ballbe* to preclude consideration of the merits of Jaramillo's previously filed § 212(c) application. The Board, in light of *Ballbe*, upheld the Immigration Judge's decision and dismissed the appeal. Jaramillo petitioned for review by this Court.

The INS succeeded in convincing the Immigration Judge and the Board to apply our *Marti–Xiques* and *Ballbe* decisions to deny consideration of Jaramillo's § 212(c) application. Nonetheless, the INS has now acquiesced in Jaramillo's suggestion for hearing en banc in this case, 989 F.2d 1117, and has informed this Court that it agrees that we should defer to the Board's interpretation of § 212(c) and overrule our two contrary decisions. This change in position by the INS, coupled with the existence of an inter-circuit conflict between the Fifth and Seventh Circuits' holdings on the issue and ours in *Marti–Xiques* and *Ballbe*, prompted us to hear this case en banc in order to consider whether those two decisions should be overruled.

## DISCUSSION

The problem with our *Marti–Xiques* and *Ballbe* decisions is that they do not pay sufficient heed to Supreme Court precedent which commands us to defer to the interpretation of a statute by the agency charged with administering it, so long as the agency's interpretation is reasonable and is not inconsistent with the language of the statute or congressional intent. The Supreme Court set forth the rule of deference in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), which described a court's duty in reviewing an administrative agency's construction of a statute as a two-step process. First, the court is to determine if the intent of Congress is clear; if so, that is the end of the matter. On the other hand, if Congress has not spoken directly to the precise question at issue, a second step of review comes into play, and the court must determine whether the agency's answer to the question Congress left open reflects a permissible construction of the statute. *Id.* at 842–43, 104 S.Ct. at 2781–82.

■ Congress did not speak directly to the precise issue of when lawful domicile ends for § 212(c) purposes, so we are past the first step of the *Chevron* analysis. This case is about the second step: determining whether the agency's construction of the statute is a permissible one. Under *Chevron* a court is not to search for what in the court's view is the best possible construction of the statute: "The court need not conclude

that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11. Instead, a court's review is confined to whether the agency's construction is a reasonable one, and the court may not substitute its own construction of a statutory provision for that of the agency. *Id.* at 844, 104 S.Ct. at 2782. Realizing that administrators and judges might well disagree about the wisdom of a policy behind an agency's construction of a statutory provision, the Supreme Court admonished courts not to forget to whom the authority and responsibility for such policy making is entrusted:

> When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do. The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: "Our Constitution vests such responsibilities in the political branches." *TVA v. Hill,* 437 U.S. 153, 195, 98 S.Ct. 2279, 2302 [57 L.Ed.2d 117] (1978).

*Id.* at 866, 104 S.Ct. at 2793.

The *Chevron* rule of deference is fully applicable to the immigration area. Indeed, even before its *Chevron* decision, the Supreme Court had held that courts are required to defer to the Board of Immigration Appeals' interpretation of the INA. *INS v. Jong Ha Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981), involved the Board's interpretation of INA § 244, 8 U.S.C. § 1254(a)(1). That section provides the Attorney General and her delegates with discretion to suspend the deportation and adjust the status of an alien when three requirements are met, one of which is that the deportation would result in "extreme hardship." *Id.* at 140–41, 101 S.Ct. at 1029. The

Board had construed that statutory term narrowly, but on appeal the Ninth Circuit disagreed, expressing its preference for a more liberal construction. The Supreme Court reversed, explaining:

> [T]he Court of Appeals improvidently encroached on the authority which the Act confers on the Attorney General and his delegates. The crucial question in this case is what constitutes "extreme hardship." These words are not self-explanatory, and reasonable men could easily differ as to their construction. But the Act commits their definition in the first instance to the Attorney General and his delegates, and their construction and application of this standard should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute.

*Id.* at 144, 101 S.Ct. at 1031. The Supreme Court held that the Attorney General's delegates had the authority to construe "extreme hardship" narrowly should they deem it wise to do so, which is what had occurred. *Id.* at 145, 101 S.Ct. at 1031; *see also INS v. Rios–Pineda,* 471 U.S. 444, 451, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985) (applying *Wang*'s deference holding to the Board's interpretation of INA § 244(a)(1)'s requirement of physical presence "for a continuous period of not less than seven years.").

The teaching of *Chevron* and *Wang* apply to the present case. In the words of *Chevron,* Congress left a "gap" in § 212(c): it failed to specify the event that marks the end of the period of lawful unrelinquished domicile, and the Board filled that gap by interpreting the statute to mean that the period ends when a deportation order becomes administratively final. *In re Lok,* 18 I. & N. Dec. at 105. In the words of *Wang,* the phrase "lawful unrelinquished domicile" is "not self-explanatory, and reasonable men could easily differ" about its interpretation.

■ When this Court reviews the manner in which the Board has filled the gap in § 212(c), *Chevron* says we may not "substitute [our] own construction of a statutory provision for a reasonable interpretation" by the agency. *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. In such a case, "the question

for the court is whether the agency's answer is based on a *permissible* construction of the statute." *Id.* at 843, 104 S.Ct. at 2782 (emphasis added). We must defer to the Board, even if its construction of § 212(c) is not the one we would choose, so long as the Board's interpretation "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, . . . unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Id.* at 845, 104 S.Ct. at 2783 (quoting *United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)). Likewise, *Wang* prohibits us from casting aside the Board's interpretation of § 212(c) "simply because [we] may prefer another interpretation of the statute." 450 U.S. at 144, 101 S.Ct. at 1031.

The reasonableness of the Board's action in filling the gap Congress left in § 212(c) is evident from the reasoning process the Board followed in deciding where along the spectrum of possibilities the cutoff point for an alien's accrual of lawful residence time should be. *See In re Lok*, 18 I. & N. Dec. at 105–07. The Board ruled out the two extremes, and moving away from those two extremes, the Board eliminated possibilities until it reached what it deemed to be a good cutoff point. One extreme, the earliest possible cutoff point, is the occurrence of the act or event leading to deportation. Prior Board decisions on related issues had established that an alien's lawful status does not change that early, and the Board chose to be consistent. *Id.* at 106. Moving forward through the deportation process, the Board also rejected as a cutoff point the Immigration Judge's adjudication that the alien is due to be deported. The Board reasoned that such a cutoff would be premature, because on appeal the Board is not bound by the decisions of Immigration Judges concerning deportability, but instead reviews the record of each case de novo. *Id.* At the far end of the spectrum, the Board rejected the other extreme, which would be the date the alien departs the United States after having been ordered deported. The Board reasoned that permitting an alien under a final order of deportation to remain a lawful permanent resident would be "inherently incongruous," because that would allow a clearly deportable alien to continue to enjoy benefits, such as visa preferences for relatives, to which the alien was no longer entitled. *Id.* Moving back one step in the process, the Board decided that permitting lawful residence time to accrue pending review by the court of appeals would be unacceptable, because the appellate courts' scope of review is limited to errors of law or unfairness in procedure, instead of the de novo review conducted by the Board, and reversals of Board decisions are "relatively rare." Under these circumstances, allowing lawful residence time to continue accruing during the judicial review process would encourage spurious appeals. *Id.* at 107. As a middle ground, in between the possibilities it rejected, the Board chose as the cutoff date the time at which the deportation decision becomes administratively final. As the Board explained, because "[a]uthority to adjudicate an alien's deportability is vested primarily in the Attorney General and his delegates, the immigration judge and the Board," their decisions are the primary components in the process. *Id.* Thus, the Board concluded that

> the policies of the Act would best be served by deeming the lawful permanent resident status of an alien to end with the entry of a final administrative order of deportation—generally, when the Board renders its decision in the case upon appeal or certification or, where no appeal to the Board is taken, when appeal is waived or the time allotted for appeal has expired.

*Id.* at 105.

The Fifth and Seventh Circuits have each deferred to the Board's construction of § 212(c), which it initially announced in *Lok.* The Fifth Circuit explained its decision as follows: "The *Lok* opinion, which the Board followed in the instant case, reflects careful consideration of the solution to the problem of when lawful residence in this country should terminate. We find nothing unreasonable about the [Board's] rationale or its conclusion." *Rivera v. INS*, 810 F.2d 540, 541 (5th Cir.1987). The Seventh Circuit, after reviewing the Board's *Lok* decision, reached the same conclusion. *Variampar-*

*ambil v. INS*, 831 F.2d 1362, 1367 (7th Cir. 1987) ("We agree with the Fifth Circuit that the Board's interpretation of § 212(c) is reasonable and reflects a careful consideration of the alternatives."). No decision of which we are aware has held that the Board's interpretation of § 212(c) establishing the cutoff date for accrual of lawful domicile status is unreasonable.[2]

The Board's interpretation of the statute is not necessarily the one we would choose were the choice ours to make. Indeed, our prior decisions in *Marti–Xiques* and *Ballbe* reflect a preference for a different interpretation. Nonetheless, we agree with the Fifth and Seventh Circuits that the Board's interpretation is reasonable and permissible. Under *Chevron* and *Wang* our inquiry stops there. We are required to defer to the Board, and we do so. The Board's rule is now the rule in this Circuit: lawful unrelinquished domicile status for § 212(c) purposes ends when the deportation order becomes administratively final, as specified in the Board's opinion in *In re Lok*, 18 I. & N. Dec. 101 (BIA 1981).

Not only does our conclusion today help heal an intercircuit split, it also will help achieve nationwide uniformity in an area of the law where uniformity is particularly important. The Board has expressed concern over the inconsistent application of § 212(c) which resulted in large part from our prior decisions in *Marti–Xiques* and *Ballbe*. Noting that "a principal mission of the Board of Immigration Appeals is to ensure as uniform an interpretation and application of this country's immigration laws as is possible," the Board stated in *In re Cerna*, No. A–30257519, slip op. at 10 (BIA Oct. 7, 1991) (Appendix), that the division among the circuits was making that goal unattainable. The result of the split of authority, the Board wrote, was that an alien's eligibility for § 212(c) relief depended upon where a case

arises. *Id.* at 13. While admitting that "this is not an issue in which there is an obviously correct or incorrect answer," *id.* at 14, the Board nonetheless described a genuine problem:

> The laws that we administer and the cases we adjudicate often affect individuals in the most fundamental ways. We think that all would agree that to the greatest extent possible our immigration laws should be applied in a uniform manner nationwide, particularly where the most significant aspects of the law are in issue. Here, however, we are left with a patchwork application of the law—with the most profound decisions affecting aliens (all of whom in this context have been lawful permanent residents of the United States) tied to the mere happenstance of where their cases arise geographically.

*Id.* By deferring to the Board's interpretation of § 212(c), as we are required to do by the *Chevron* and *Wang* decisions, we have aligned ourselves with the Fifth and Seventh Circuits, thereby doing what we can to make possible a uniform nationwide application of the immigration laws.

## CONCLUSION

Because Jaramillo had been a lawful permanent resident of this country for more than seven years at the time his deportation order became administratively final, he is eligible to be considered for discretionary relief under § 212(c). But nothing we say is meant to imply in the least that the Attorney General and her delegates should grant Jaramillo relief from deportation. He is a convicted felon. He conspired to import cocaine into this country. Under the law, the Attorney General and her delegates must consider Jaramillo's request for relief, but they remain free to deny that request. *Cf. INS v. Rios–Pineda*, 471 U.S. 444, 450, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985) (noting

---

**2.** Upon review of the Board's decision in *Lok* itself, the Second Circuit in dictum expressed the belief that Lok's lawful domicile period "may" have ended when he conceded deportability instead of when the Board thereafter decided the appeal involving denial of his § 212(c) relief request. *Lok v. INS*, 681 F.2d 107, 110 (2d Cir. 1982). Coming as it did prior to *Chevron*, the

Second Circuit's *Lok* opinion contains no analysis of whether the Board's construction of the statute is reasonable, and the Second Circuit's dictum is unpersuasive for that reason. The Fifth and Seventh Circuit decisions, on the other hand, were informed by *Chevron*, and we agree with their holdings.

**1156**

Attorney General's broad discretion over decisions to suspend deportation orders under INA § 244(a)(1), 8 U.S.C. § 1254(a)(1)).

The decision of the Board of Immigration Appeals that Jaramillo is ineligible to be considered for § 212(c) discretionary relief is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

EDMONDSON, Circuit Judge, concurs in the result.