Jorge E. ACOSTA–MONTERO, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 93–5258.

United States Court of Appeals, Eleventh Circuit.

Sept. 5, 1995.

---

**1348**

Bradley O. June, Jeffrey N. Brauwerman, Brauwerman & Brauwerman, P.A., Miami, FL, for petitioner.

Joseph F. Ciolino, Asst. U.S. Atty., OIL, Civ. Div., Dept. of Justice, Washington, DC, for respondent.

Before TJOFLAT, Chief Judge, BLACK, Circuit Judge, and KAUFMAN *, Senior District Judge.

TJOFLAT, Chief Judge:

I.

Section 212(c) of the Immigration and Nationality Act ("INA" or "Act"), 8 U.S.C. § 1182(c), gives the Attorney General discre-

tion to admit to the United States "[a]liens lawfully admitted for permanent residence who temporarily proceed[ ] abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile [in the United States] of seven consecutive years...." The Attorney General's discretion under section 212(c) has been extended to cases of an alien already present in the United States, who has been declared deportable under INA § 241(a)(11), 8 U.S.C. § 1251(a)(11).[1] Section 241(a)(11) renders deportable an alien "who at any time has been convicted of a violation of ... any law or regulation relating to the illicit possession of or traffic in narcotic drugs...."[2]

On February 18, 1986, appellant Jorge E. Acosta–Montero, an alien lawfully admitted for permanent residence who has maintained his residence here continuously since 1977, was convicted in federal district court of trafficking and conspiracy to traffic 200 grams of cocaine and was sentenced to concurrent prison terms of sixty-six months.[3] On April 15, 1988 the INS initiated deportation proceedings under section 241(a)(11) of the Act. The case was heard by an immigration judge on March 30, 1989. After the judge announced that Acosta–Montero's convictions rendered him deportable, Acosta–Montero's attorney sought, and was granted, leave to file an application for section 212(c) relief; specifically, a "waiver of deportation" by the Government so that he could remain in the United States.

The immigration judge denied Acosta–Montero's application, and on August 6, 1993, the Board of Immigration Appeals (the "Board"), concluding that the immigration judge had acted well within his discretion, dismissed Acosta–Montero's appeal. The Board's decision is not challenged in this appeal.

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

1. *See, e.g., Melian v. INS,* 987 F.2d 1521, 1523 (11th Cir.1993); *Tapia–Acuna v. INS,* 640 F.2d 223, 224 (9th Cir.1981); *Francis v. INS,* 532 F.2d 268, 272–73 (2d Cir.1976).

2. The subsections that specify the grounds of deportability have been revised. Prior law, how-

ever, governs this case—Acosta–Montero's order to show cause was served in April 1988.

3. Acosta–Montero is a native of Costa Rica. He initially entered the United States in 1968 under a student exchange program. When the program was completed he returned to Costa Rica. In 1977, he reentered the United States as a lawful permanent resident.

On September 13, 1993, Acosta–Montero moved the Board to reopen his deportation proceeding so that it could reconsider his application for section 212(c) relief. He contended that his family responsibilities had dramatically changed since the Board's decision and asked that the Board remand his application to the immigration judge for a hearing. Specifically, Acosta–Montero stated that his father had been diagnosed with lung cancer on August 10, 1993, four days after the Board had dismissed his appeal. His father is a lawful permanent resident who resides with him and depends on him for financial support and transportation. No other family members are available to care for Acosta–Montero's father.

On November 9, 1993, the Board summarily denied Acosta–Montero's motion. The Board held that, with the issuance of its decision on August 6, Acosta–Montero lost his lawful permanent resident status and thus was no longer eligible for section 212(c) relief. Accordingly, there was no reason for reopening Acosta–Montero's deportation proceeding. Acosta–Montero now appeals.

## II.

The precise question before us is whether the Board's dismissal of Acosta–Montero's appeal automatically foreclosed his right to seek section 212(c) relief. The courts of appeals are split on this question. *Compare Nwolise v. INS,* 4 F.3d 306, 312 (4th Cir. 1993) (upholding Board's rule), *cert. denied,* —— U.S. ——, 114 S.Ct. 888, 127 L.Ed.2d 82 (1994); *Katsis v. INS,* 997 F.2d 1067, 1075–76 (3d Cir.1993) (same), *cert. denied,* —— U.S. ——, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994); and *Ghassan v. INS,* 972 F.2d 631, 637–38 (5th Cir.1992) (same), *cert. denied,* —— U.S. ——, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993) *with Henry v. INS,* 8 F.3d 426, 439 (7th Cir.1993) (setting aside the Board's rule); *Goncalves v. INS,* 6 F.3d 830 (1st Cir.1993) (same); *Butros v. INS,* 990 F.2d 1142, 1144–45 (9th Cir.1993) (en banc) (rejecting the Board's rule and overruling *Gonzales v. INS,* 921 F.2d 236 (9th Cir.1990), which had accepted the rule); and *Vargas v. INS,* 938 F.2d 358, 362 (2d Cir.1991) (finding the Board's rule arbitrary and capricious).

We align ourselves with the circuits that have rejected the position the Board has taken in this case.

### A.

■ The circuits have disagreed about the standard under which the courts of appeals should review the Board's decision in these cases. *See, e.g., Butros,* 990 F.2d at 1144 (labelling the question as "purely legal" and calling for de novo review); *Katsis,* 997 F.2d at 1070–71 (deferring to the Board's interpretation if it is "permissible" or "not arbitrary or capricious"). In *Jaramillo v. INS,* 1 F.3d 1149, 1152–53 (11th Cir.1993) (en banc), which also involved an alien's eligibility for section 212(c) relief, we relied on the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), for the proposition that the Board's interpretation is entitled to deference and will be upheld as long as it is reasonable. *See also Henry,* 8 F.3d at 434. Because Congress has not spoken directly to this question, the Board's interpretation is entitled to deference, assuming it is reasonable.

### B.

■ The INS regulation permitting an alien to file a motion to reopen or to reconsider any decision of the Board provides:

The Board may on its own motion reopen or reconsider any case in which it has rendered a decision. Reopening or reconsideration of any case in which a decision has been made by the Board, whether requested by the Commissioner or any other duly authorized officer of the Service, or by the party affected by the decision, shall be only upon written motion to the Board. Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary

relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the *relief is sought on the basis of circumstances which have arisen subsequent to the hearing.* A motion to reopen or a motion to reconsider shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States. Any departure from the United States of a person who is the subject of deportation proceedings occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.

8 C.F.R. § 3.2 (emphasis added). Acosta–Montero filed his motion to reopen his deportation proceedings pursuant to this regulation.

In summarily denying his motion to reopen, the Board relied on our *Jaramillo* decision as controlling authority. It is not. In *Jaramillo*, we considered the distinct question of whether an alien may accrue time towards section 212(c)'s seven-year residency requirement after a final order of deportation has been entered. 1 F.3d at 1150. To resolve this question, we considered the reasonableness of the Board's decision in *In re Lok*, 18 I. & N. Dec. 101 (BIA 1981), *aff'd on other grounds*, 681 F.2d 107 (2d Cir.1982), that lawful domicile ends when an order of deportation becomes administratively final. We found the Board's interpretation to be reasonable. *Jaramillo*, 1 F.3d at 1155. *Jaramillo* means only that lawful permanent resident status terminates with the entry of a final order of deportation for purposes of fulfilling the seven years of lawful unrelinquished domicile required for section 212(c) relief. *Lok* and its progeny, including *Jaramillo*, do "not mean, however, that the alien's 'status' *must also* 'change' for the purpose of his eligibility to ask for reopening." *Goncalves*, 6 F.3d at 834.

The language of the regulation creates an absolute barrier to moving to reopen or reconsider only as to "a person who is the subject of deportation proceedings subsequent to his departure from the United States." The administrative finality of the Board's decision is simply not addressed.

If the Board's original decision were final as to the status of the petitioner for discretionary relief, then of course there would be no such thing as reconsideration or reopening for the petitioner who lost on the first round. But to say, as the Board's regulations do say, that you may have a second round and at the same time to say, as the Board says here, you may not have a second round, is to engage in contradiction.

. . . .

... What is crystal-clear is that as long as the Board may reconsider or reopen the case, the status of the petitioner in that case for purposes of section 212(c) relief has not been finally determined for purposes of action by the Board.

*Butros*, 990 F.2d at 1144–45. The Board "has acted in the face of a regulation that seems rather clearly to authorize the very kind of 'reopening' motion that its cases then deny." *Goncalves*, 6 F.3d at 835.

The Third Circuit had no problem applying *Lok*'s finality rule to a case where the seven-year domicile requirement had been met. The court found the Board's rule "permissible" "[i]f for no other reason than ease of application"[4] because "it is reasonable to attempt to establish one single standard for the time an alien's lawful permanent resident status changes for all purposes under section 212(c)." *Katsis*, 997 F.2d at 1073. In that court's view, its bright-line rule "sets the last day through which an alien can manipulate deportation proceedings by his or her after-the-fact manufacture of additional evidence of equities to balance the adverse factor or factors he or she must overcome to receive discretionary relief under section 212(c)." *Id.* We are not persuaded by this reasoning.

**4.** We agree with the Seventh Circuit's statement that "[w]hen a matter as serious as deportation from this country is at issue, we should not focus on ease of application, for 'easy' rules often preclude any inquiry into individual equities, which is what section 212(c) is all about." *Henry*, 8 F.3d at 438 n. 17.

*Katsis* assumes that aliens always manufacture evidence to support their applications for a discretionary waiver of deportation. Although some section 212(c) evidence may be subject to manipulation, not all changes in circumstances are fabricated (e.g., a family member's death or illness). " 'Manufactured' evidence can ... be weeded out when the Board considers whether to reopen proceedings in the exercise of its discretion. That concern therefore does not justify a rule precluding *all* evidence of changed circumstances at the outset." *Henry,* 8 F.3d at 438.

 Although the Board has broad discretion to deny motions to reopen, *see INS v. Doherty,* 502 U.S. 314, 323, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992); *INS v. Abudu,* 485 U.S. 94, 105–06, 108 S.Ct. 904, 912–13, 99 L.Ed.2d 90 (1988), it may not ignore its own regulations. The Board interprets this regulation in a manner that "amounts to an amendment of the regulation, made without the benefit of notice and the opportunity for public comment." *Henry,* 8 F.3d at 439. We must hold the Board to the regulations the INS has adopted. "If the INS now wishes to adopt different regulations, that route is available to it." *Butros,* 990 F.2d at 1146 (Fernandez, J., concurring).

We are not saying that Acosta–Montero has established a right to discretionary relief under section 212(c) and thus that the Board must reopen his deportation proceeding. We merely hold that, having established the requisite seven years of lawful unrelinquished domicile, he remains eligible to pursue section 212(c) relief. In sum, he is entitled to have his new evidence considered.

Because we find the Board's interpretation of the INA and its own regulation to be unreasonable, the petition is GRANTED and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

---

1. I agree with the majority's conclusion that Congress, in enacting the INA, did not speak directly to the precise issue of whether a final deportation order renders an alien ineligible for § 212(c) relief. *See Chevron,* 467 U.S. at 842–43,

BLACK, Circuit Judge, dissenting:

I agree with the majority that the Board's construction of § 212(c) is reviewed under the deferential standard of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and *Jaramillo v. INS,* 1 F.3d 1149 (11th Cir.1993) (en banc). I dissent because, in my opinion, the majority fails to give proper deference to the Board's reasonable interpretation of § 212(c), places undue significance on the INS's motion to reopen regulation, and diminishes the INS's legitimate interest in finality.

Much has been written on why the Board's interpretation of § 212(c) is a reasonable one, *see Nwolise v. INS,* 4 F.3d 306, 309–12 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 888, 127 L.Ed.2d 82 (1994); *Katsis v. INS,* 997 F.2d 1067, 1069–75 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994); *Butros v. INS,* 990 F.2d 1142, 1147–53 (9th Cir.1993) (en banc) (Trott and Brunetti, JJ., dissenting); *Ghassan v. INS,* 972 F.2d 631, 637 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1412 (1993); *Matter of Cerna,* Interim Decision, slip op. 3161 at 2–3 (BIA Oct. 7, 1991), *aff'd* 979 F.2d 213 (11th Cir.1992), so I confine my remarks to explaining why I am unconvinced by the majority's reasoning. In reviewing the Board's interpretation of § 212(c), our task is limited to determining whether the Board's statutory interpretation is reasonable.[1] *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782; *Jaramillo,* 1 F.3d at 1153. A brief review of § 212(c)'s text demonstrates the reasonableness of the Board's interpretation.

Section 212(c) relief is available to "[a]liens lawfully admitted for permanent residence." 8 U.S.C.A. § 1182(c) (West 1970). The INA defines aliens "lawfully admitted for permanent residence" as:

> the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in ac-

---

104 S.Ct. at 2781; *Jaramillo,* 1 F.3d at 1152. Nevertheless, if this were a case of pure statutory interpretation, I believe that the Board presents a better interpretation of § 212(c) than does the majority.

cordance with the immigration laws, *such status not having changed.*

Section 101(a)(20); 8 U.S.C.A. § 1101(a)(20) (West 1970) (emphasis added).[2] The Board's position is simply that a final deportation order constitutes a change of status rendering the alien prima. facie ineligible for § 212(c) relief because the alien is no longer lawfully admitted for permanent residence. To me, this interpretation is quite reasonable and not "arbitrary, capricious, or manifestly contrary to the statute"—the standard for reversing agency interpretations. *See Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782.

The majority relies on 8 C.F.R. § 3.2, which authorizes motions to reopen, finding that the Board's position is unreasonable because the motion to reopen regulation only prohibits such motions after an alien's departure from the United States and does not discuss finality. The majority therefore reasons that the regulation authorizes motions like Petitioner's and purports to "hold the Board to the regulations the INS has adopted."

The majority's argument would be powerful if § 3.2 only addressed motions to reopen denials of § 212(c) relief.[3] In that case, the Board's interpretation would effectively repeal § 3.2 without complying with the procedural requirements of the Administrative Procedure Act. *See* 5 U.S.C.A. § 553 (West 1977). But the Board's interpretation of § 212(c) effects no such repeal because § 3.2 motions to reopen are not confined to persons seeking relief from denials of § 212(c) relief. Instead, § 3.2 and its related regulations[4] allow aggrieved litigants to reopen a wide variety of Board proceedings, which are by no means confined to § 212(c) or even deportation proceedings in general. 8 C.F.R. § 3.1(b); *INS v. Abudu*, 485 U.S. 94, 105 n. 10, 108 S.Ct. 904, 912 n. 10, 99 L.Ed.2d 90 (1988) (stating that "[t]he BIA's regulation

that provides for reopening of deportation proceedings, 8 CFR § 3.2 (1987), applies to all motions to reopen, regardless of the underlying substantive basis of the alien's claim"). The Board's interpretation of § 212(c), which bars aliens from reopening § 212(c) denials, leaves § 3.2 intact for many purposes and merely removes a narrow class of movants from the regulation's scope.

The majority's § 3.2 argument therefore reduces to claiming that the regulation, by not explicitly permitting the Board to reject motions on prima facie, statutory-eligibility grounds, does not permit any interpretation of § 212(c) (or, presumably, any other INA provision) which renders an alien prima facie ineligible for relief. I reject this position because it makes statutory interpretation totally dependent on a procedure created solely under the authority of mere "regulations promulgated by the Attorney General." *INS v. Doherty*, 502 U.S. 314, 322, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992); *see INS v. Rios–Pineda*, 471 U.S. 444, 446, 105 S.Ct. 2098, 2100, 85 L.Ed.2d 452 (1985) (explaining that motions to reopen are allowed by regulation, not statute).

Interpreting § 3.2 as enumerating the exclusive grounds for denying motions to reopen or reconsider leads to questionable results. Although the regulation does not explicitly require that the alien present a statutory basis for relief when moving to reopen, surely this requirement is assumed. Were it otherwise, the Board would be forced to consider on the merits any claim for relief, no matter how absurd. Indeed, the Supreme Court has stated that a litigant's failure to establish a prima facie case for the relief sought is a valid ground for denying a § 3.2 motion to reopen. *Doherty*, 502 U.S. at 323, 112 S.Ct. at 725; *Abudu*, 485 U.S. at 104, 108 S.Ct. at 912. The Supreme Court accepts

---

2. The legislative history sheds no additional light on what Congress intended to accomplish when enacting § 101(a)(20). *See* H.R.Rep. No. 1365, 82d Cong., 2d Sess., (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653, 1684; S.Rep. No. 1137, 82d Cong., 2d Sess. 4 (1952).

3. The majority's § 3.2 argument would also be strong if that regulation specifically referred to § 212(c) denials in its text. But § 3.2 makes no

such reference, and simply refers to "any case in which it has rendered a decision." 8 C.F.R. § 3.2. As I explain more fully below, this phrase, understood in its proper statutory context, implicitly requires that the movant have a valid ground for relief under the INA before she may reopen "any case."

4. *See* 8 C.F.R. § 3.8; 8 C.F.R. § 3.23(b); 8 C.F.R. § 103.5.

the logical notion that, despite § 3.2's silence on the issue, the motion to reopen regulation must be interpreted to implicitly require a movant to have a valid claim for relief under the INA.

Finally, I believe the majority places insufficient weight on the INS's interests in finality and administrative convenience. "Underlying considerations of administrative and judicial efficiency" are important considerations when interpreting the INA. *Stone v. INS,* —— U.S. ——, ——, 115 S.Ct. 1537, 1545, 131 L.Ed.2d 465 (1995). Such considerations "apply with even greater force in the INS context" and have led the Supreme Court to create a presumption against motions to reopen. *Abudu,* 485 U.S. at 110, 108 S.Ct. at 915; *see Doherty,* 502 U.S. at 323, 112 S.Ct. at 724–25.

Moreover, although the majority correctly notes that *Jaramillo* does not compel the Board's interpretation, *Jaramillo* and the Supreme Court's recent decision in *Stone,* —— U.S. at ——, 115 S.Ct. at 1537, certainly suggest that the Board's interpretation is reasonable. To me, it appears quite logical to hold that because a final deportation order stops the accrual of time during which an alien is considered to have maintained "a lawful unrelinquished domicile," *Jaramillo,* 1 F.3d at 1155, and because a final deportation order begins the 90–day period for seeking judicial review of that decision, *Stone,* —— U.S. at ——–——, 115 S.Ct. at 1543–44, that same deportation order terminates an alien's status as "lawfully admitted for permanent residence," 8 U.S.C.A. § 1182(c). Similarly, if a motion to reopen does not render a deportation order non-final for purposes of appeal, *Stone,* —— U.S. at ——–——, 115 S.Ct. at 1543–44, it does not appear "arbitrary, capricious, and manifestly contrary to the statute," *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782, to conclude that such a

motion does not render a deportation order non-final for purposes of determining an alien's status as "lawfully admitted for permanent residence," 8 U.S.C.A. § 1182(c).[5]

In conclusion, I respectfully dissent because the Board's interpretation of § 212(c), holding that a final deportation order is a change of status terminating Petitioner's eligibility for § 212(c) relief, is a reasonable one entitled to deference by this Court.

---

5. The Board's different treatment of motions to reconsider versus motions to reopen, *see Cerna,* Interim Decision, slip op. 3161 at 3, has been viewed as inconsistent by some courts, *see, e.g., Goncalves v. INS,* 6 F.3d 830, 834 (1st Cir.1993). To me, that alleged inconsistency is no more anomalous than the majority's remedy, which would treat § 3.2 motions to reconsider and motions to reopen consistently by holding that a final deportation order is a change of status for

some purposes, *see Jaramillo,* 1 F.3d at 1155, but not for this purpose. Even assuming that these positions are equally inconsistent, *Chevron* requires that we accept the position chosen by the Board. Moreover, I believe that the different nature of motions to reconsider versus motions to reopen justifies different treatment by the Board. *See Cerna,* Interim Decision, slip op. 3161 at 3.