Kevin S. WOLKE, Plaintiff,

v.

DREADNOUGHT MARINE,
INC., Defendant.

Civil Action No. 2:96cv843.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 19, 1997.

Jack Ferebee, Virginia Beach, VA, for Plaintiff.

Peter Stevenson Lake, Heilig, McKenry, Fraim & Lollar, Norfolk, VA, for Defendant.

### ORDER AND OPINION

DOUMAR, District Judge.

This suit relates to an employment dispute about insurance coverage. Plaintiff, a former employee of Dreadnought Marine, asserts three claims in his complaint. Count One alleges a violation of the Family and Medical Leave Act. Count Two alleges a breach of an implied contract, and Count Three alleges a failure to comply with requirements mandating that employers give employees notification about changes in their insurance coverage. This case is before the Court on Defendant's Motion for Summary Judgment on Count One and Count Three. This opinion memorializes this Court's ruling from the bench.

### I. Factual Background

Kevin Wolke was hired as an employee of Dreadnought Marine in September 1994. He was covered by Dreadnought's group health insurance plan. In April 1995, he injured his back in a nonwork-related accident; the injury rendered him unable to work. In July 1995, Dreadnought canceled Wolke's insurance and claimed that the cancellation was retroactive from June 1,

1995. Wolke underwent back surgery on July 27, 1996. When his insurance coverage was later denied, Wolke faced judgments on outstanding medical bills. Dreadnought, however, subsequently reinstated Wolke's insurance coverage so that his medical bills would be paid by Dreadnought's insurer.

## II. Count I—FMLA

Count One charges a violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq. The Family and Medical Leave Act was recently enacted to grant certain employees the right to take leave from employment to attend to qualifying events, such as personal medical needs or the medical needs of family members. Wolke states that he was entitled to the protections of the Act because he went on medical leave, and that Dreadnought violated the Act by canceling his coverage in violation of 29 U.S.C. § 2614(c)(1).[1] Dreadnought argues that Wolke is not an eligible employee, and that he is therefore not entitled to the FMLA's protections.

Under the statute, an employee must work for twelve months and 1250 hours before the employee is considered "eligible" and entitled to the FMLA's protections. 29 U.S.C. § 2611(2)(A)(I). All parties agree that Wolke was not employed by Dreadnought for twelve months prior to his taking leave. Furthermore, his complaint does not contain any allegation about the number of hours that he worked.[2] Accordingly, Wolke is an ineligible employee under the statute.

Despite Plaintiff's obvious ineligibility under the statute, Plaintiff argues that he should be deemed an eligible employee under the FMLA by operation of 29 C.F.R.

§ 825.110(d) (1996). When the FMLA was enacted, the Secretary of Labor was authorized to promulgate regulations as "are necessary to carry out" the FMLA. 29 U.S.C. § 2654. The regulations promulgated pursuant to that authority are found in Volume 29 of the Code of Federal Regulations. That regulation states:

> If an employee notifies the employer of need for FMLA leave before the employee meets these eligibility criteria, the employer must either confirm the employee's eligibility based upon a projection that the employee will be eligible on the date leave would commence or must advise the employee when the eligibility requirement is met. If the employer confirms eligibility at the time the notice for leave is received, the employer may not subsequently challenge the employee's eligibility. In the latter case, if the employer does not advise the employee whether the employee is eligible as soon as practicable (i.e., two business days absent extenuating circumstances) after the date employee eligibility is determined, the employee will have satisfied the notice requirements and the notice of leave is considered current and outstanding until the employer does advise. If the employer fails to advise the employee whether the employee is eligible prior to the date the requested leave is to commence, the employee will be deemed eligible. The employer may not, then, deny the leave. Where the employee does not give notice of the need for leave more than two business days prior to commencing leave, the employee will be deemed to be eligible if the employer fails to advise the employee that the employee is not eligible within two business days of receiving the employee's notice.

---

**1.** Section 2614(c) provides that when an eligible employee takes qualifying leave, "the employer shall maintain coverage under any 'group health plan' ... for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave."

**2.** Even if Wolke had worked twelve months prior to his taking leave, his failure to allege that he worked 1250 hours could be fatal to his claim. *See Spurlock v. NYNEX*, 949 F.Supp. 1022 (W.D.N.Y.1996) (dismissing complaint for failure to state a claim because of plaintiff's failure, inter alia, to allege facts evidencing eligibility); *Blidy v. Examination Management Services, Inc.*, No. 96C 3553, 1996 WL 568786 (N.D.Ill. Oct. 2,

29 C.F.R. § 825.110(d).[3] Focussing on the last sentence of the regulation, Plaintiff claims that because Dreadnought failed to inform him about his FMLA ineligibility, Dreadnought is estopped from asserting Wolke's ineligibility by operation of the regulation. Thus, Wolke argues that Dreadnought's failure to inform Wolke that he was ineligible results in his automatic eligibility.[4]

Dreadnought asserts that Wolke's complaint fails to allege that Wolke told his employer about his need to take medical leave, the event Dreadnought argues would trigger the application of 29 C.F.R. § 825.110. A district court dismissed a similar case because the plaintiff's complaint failed to allege that she had told her employer about her need to take leave. *See Jessie v. Carter Health Care Center, Inc.*, 926 F.Supp. 613, 617 (E.D.Ky.1996). In this case, the complaint does not aver that Wolke informed his employer about the need to take medical leave; it merely alleges that Wolke was "forced to take leave from Dreadnought." Accordingly, 29 C.F.R. § 825.110 might not apply in this case, and Dread-

nought might assert Wolke's ineligibility, regardless of 29 C.F.R. § 825.110.

■ If plaintiff amended his complaint to cure the deficiency by asserting that he did inform his employer about the need to take leave, Wolke would still be an ineligible employee under the FMLA. The regulation upon which Wolke relies to establish ineligibility, 29 C.F.R. § 825.110, is invalid, because it impermissibly contradicts the clear intent of Congress to restrict the class of employees eligible for the FMLA.

The leading case on judicial review of regulations is *Chevron U.S.A., Inc. v. Natural Resources Defense*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron*, the Supreme Court considered a regulation promulgated by the Environmental Protection Agency and laid out the framework under which courts should assess an agency's regulations. The Court explained:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise

1996) (dismissing complaint because of failure to allege that employee worked 1250 hours).

3. Interestingly, the current, final regulation cited above replaced an interim version, *see* The Family and Medical Leave Act of 1993, 58 Fed.Reg. 31794, 31816 (1993), which was later amended. Under the interim regulation, the employer did not bear the burden of informing the employee about ineligibility. The employer could opt to inform the employee about eligibility, and the employer was only bound by its statement of eligibility if it did choose to make an affirmative statement of eligibility. The interim regulation stated:

> If an employee notifies the employer of the need for FMLA leave before the employee meets these eligibility criteria, the employer may confirm the employee's eligibility based upon a projection that the employee will be eligible on the date leave would commence or may advise the employee when the eligibility requirement may be met. In the former case, the employer may not subsequently challenge the employee's eligibility and provided the other requirements of these regulations are met, the employee will have satisfied the notice requirements even if not yet eligible for FMLA benefits.

*Id.* The interim regulation was circulated for notice and comments. This Court found no comments or legislative history discussing the De-

partment of Labor's rationale for the regulation's amendment to its final form.

The final regulations were adopted on January 6, 1995, *see* The Family and Medical Leave Act of 1993, 60 Fed.Reg. 2180, 2180 (1995), and were scheduled to take effect in February 1995. The Department of Labor further delayed the effective date of the final regulations until April 6, 1995. *See* The Family and Medical Leave Act of 1993, 60 Fed.Reg. 6658, 6658 (1995). Whether the amendment of the regulation complied with the procedures required by the Administrative Procedure Act, 5 U.S.C. § 553, is an issue not addressed in this opinion.

4. Other litigants have also made this claim. *See Schlett v. Avco Fin. Servs., Inc.*, 950 F.Supp. 823, 835 (N.D.Ohio 1996) (plaintiff who worked for ten months claimed to be eligible under the regulation); *Robbins v. Bureau of Nat'l Affairs, Inc.*, 896 F.Supp. 18, 21 (D.D.C.1995) (employee who worked for 875 hours claimed to be eligible under regulation). In both of these cases, however, the courts were able to avoid squarely addressing the regulation because the interim form of the regulation was in effect at the time the employees took leave. In this case, Wolke stopped working in May 1995. The final regulations became effective in April 1995. *See* 60 F.R. at 6658. Thus, the final regulation was in effect when Wolke left Dreadnought, and this Court must address the validity of the regulation.

question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Id.* at 841–44, 104 S.Ct. at 2781–82. This preliminary question is often referred to as step one of the *Chevron* test. The Court further explained that if Congress has not spoken and has explicitly or implicitly left a gap for regulations to fill, then the court must proceed to step two—considering whether the agency's interpretation of the statute is "based upon a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. Under step two of *Chevron,* an agency's interpretation ordinarily is accorded deference, unless the regulation is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* Step two of *Chevron* tracks the standard of review set out in the Administrative Procedure Act, which allows Courts to strike down regulations that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).[5]

The *Chevron* framework is a topic of much debate, reflected in lively discourses in later Supreme Court cases, lower court cases, and scholarly works. Much discussion has centered on when a regulation or adjudication should be considered "directly contrary" to Congress's intent. In other words, should step one of *Chevron* be given a limited or broad scope? The Supreme Court's own division on this issue is illustrated in *INS v. Cardoza–Fonesca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), a case in which the Justices disagreed about whether step one or step two of the *Chevron* analysis applied.

■ Very rarely would a regulation flatly contradict the plain wording of the statute. For example, if Section 825.110 stated that an employee would be eligible under FMLA after working one day, the regulation would patently contradict the statute. This Court

concludes that the *Chevron* analysis is not limited to such patent contradictions. Such a narrow view of step one of *Chevron* would render step one almost meaningless. Rather, the first step of *Chevron* must also cover latent contradictions that become evident only upon application of the regulation. The cases that the Supreme Court itself cited in *Chevron* bolster this conclusion. *See also Brown v. Gardner,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (striking down a Department of Veterans Affairs regulation purporting to limit coverage of veterans' injuries because the statute mentioned only all "injuries" with no limiting language); *Legal Assistance for Vietnamese Asylum Seekers v. Dept. of State,* 45 F.3d 469, 473 (D.C.Cir. 1995) (holding that Congress's intent in passing a statute providing that people should not be discriminated because of their nationality when applying for immigrant visas was clear, and that a regulation mandating special procedures for Vietnamese was contrary to Congress's "unambiguously" expressed direction which left "no room" for the "regulation").

Thus, under the *Chevron* framework, this Court must first determine whether Congress has spoken on the precise issue, or whether Congress left a gap for the regulations to fill. If Congress has spoken and the regulation contradicts Congress's intent, then the regulation is void. In this case, Congress clearly stated that employees must work for twelve months and 1250 hours to achieve eligibility under the FMLA. Congress left no explicit or implicit gap for the regulations to fill, and employees should only receive the protections of the FMLA if they have worked for twelve months and the requisite amount of time. *See Schlett v. Avco Financial Services, Inc.,* 950 F.Supp. 823, 834–35 (N.D.Ohio 1996) (characterizing a plaintiff who had worked for ten months as ineligible under the "plain language of the statute"); *see also Rich v. Delta Air Lines, Inc.,* 921 F.Supp. 767 (N.D.Ga.1996) (rejecting a plaintiff's argument that another regulation expanded FMLA's eligibility requirements and

---

5. The Court notes that the comparative scopes of *Chevron* and the Administrative Procedure Act are not crisply defined, and the Fourth Circuit has not clearly indicated its view of the relationship between the two. In any event, given the

Court's finding that the statute would be invalid under both *Chevron* and the Administrative Procedure Act, the distinction makes little practical difference in this case.

noting that even if the Department of Labor had intended plaintiff's interpretation, the regulation would be invalid because of Congress's "specifically mandated" eligibility provision).

The Department of Labor regulation, 29 C.F.R. § 825.110, purports to transform employees who are ineligible under the FMLA statute into eligible employees. Under a literal application of the regulation, an employee could work for one day, then inform her employer that she is sick and is leaving. If the employer fails to tell the employee she is ineligible for FMLA leave, the regulation at issue ostensibly would "deem her eligible," even though she has worked for merely one day. Any regulatory exceptions which purport to shorten the twelve-month eligibility period are impermissible creations of the Department of Labor.[6]

True, courts often defer to executive agencies' regulations in order to avoid substituting the judgment of the court for the judgment of executive regulators in filling gaps left by Congress. Deference to regulations protects the separation of powers in most cases. But in this case, the executive branch has exceeded its authority and usurped Congress's role. Instead of passing a regulation that clarifies the law, the regulators passed a regulation that contradicts the law. Courts are the proper institution to check such overreaching, for courts are the "final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear Congressional intent." *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at. 2782 n. 9. "Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions." *National Labor Relations Board v. Brown*, 380 U.S. 278, 291–92, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965).

Accordingly, this Court finds that 29 C.F.R. § 825.110 directly contradicts Congress's expressed intent regarding employee eligibility under the FMLA.

One further reason for invalidation of 29 C.F.R. § 825.110 is that the regulation purports to prescribe a judicial rule of decision. By forbidding an employer from asserting a legal impediment to an employee's claim, the regulation essentially orders courts to estop the employer from asserting an employee's ineligibility. Estoppel is fundamentally equitable judicial concept, traditionally applied in the discretion of the court. A court would consider all factors in the case to determine whether estoppel should apply. For example, a court carefully would consider whether the employee relied on the employer's failure to inform him about eligibility. The regulation was presumably designed to provide aid to an employee who, with her employer's knowledge, detrimentally relied on an erroneous belief that she was eligible for FMLA leave. In this case, however, Wolke has admitted that he knew nothing about FMLA until he consulted with an attorney. His expectations could not have been cruelly dashed by Dreadnought, making him an unlikely candidate to champion the need for the regulation. Estoppel is a uniquely judicial remedy, one which should be applied only when the facts of a particular case warrant its strong medicine. Its application cannot be prescribed by the executive.

In summary, then, the Constitution contemplates three distinct branches of government: the legislature, the executive, and the judiciary. Pursuant to the authority granted by the Constitution to the legislature only, Congress enacted specific criteria for eligibility for benefits provided by an Act of Congress. In purporting to enforce the law as promulgated by Congress, the executive prescribed regulations commanding the judiciary to ignore the specific criteria set forth by Congress. In doing so, the executive presumed that it could command the judiciary to invoke a doctrine traditionally applied solely in the discretion of the courts. Thus, in

---

**6.** Even if the regulation is not viewed as "directly" opposing the intent of Congress, this Court finds that 29 C.F.R. § 825.110 would fail step

two of *Chevron* analysis because it is manifestly contrary to the statute.

demanding that courts follow 29 C.F.R. § 825.110, the executive usurped the constitutional authority of both the legislature and the judiciary. This Court cannot tolerate a regulation that upsets the constitutional balance among the three co-equal branches of government.

As Wolke seeks to apply it, 29 C.F.R. § 825.110(d) is blatantly unconstitutional and invalid. Wolke clearly is not an eligible employee under the FMLA. Thus, his claim based on the FMLA must be dismissed.

### III. Count III—COBRA

 The final count alleges that Dreadnought failed to notify Wolke about the possibility of continuing his insurance coverage pursuant to 29 U.S.C. § 1166, a particular statute in legislation commonly known as "COBRA." An employer is required to give an employee notice about the possibility of continuing insurance coverage under COBRA if an employee is terminated. *See* 29 U.S.C. § 1166; 29 U.S.C. § 1132(C)(1)(A). In this case, the parties dispute whether Wolke was terminated.[7] The date of Wolke's termination, if he was terminated, is unknown at this time. Consequently, the deadline for Dreadnought giving Wolke the COBRA notice is also unknown.

Furthermore, Dreadnought submitted an affidavit from a Dreadnought employee claiming that she hand-delivered a COBRA notice to Wolke's wife on July 10, 1995. Wolke and his wife have each submitted affidavits stating that they never received any sort of COBRA notice. The Wolkes submitted a letter from Dreadnought's Personnel Manager, which states that "an administrative error ... caused Dreadnought Marine to fail to provide the proper notification following Mr. Wolke's termination of employment." The letter arguably implicitly supports the Wolkes' claim that they never received a notice.

Obviously, material factual disputes exist as to when, and if, Wolke was terminated and when, and if, any COBRA notice was given to Wolke or his wife. These disputes preclude the entry of summary judgment on the COBRA count.[8]

### IV. Conclusion

Summary judgment for the defendant on Count One is appropriate, and judgment is entered on behalf of the defendant. Defendant's motion for summary judgment on Count Three is denied. The Clerk of the Court is DIRECTED to forward a copy of this order to counsel for all parties.

IT IS SO ORDERED.

---

7. At the hearing in this case, Dreadnought asserted that Wolke admitted in a deposition that he had not been terminated. No deposition has been submitted to the Court. Thus, any statements allegedly made may not properly be considered at this time.

8. In support of its motion for summary judgment on this count, Dreadnought cited cases in which a presumption of receipt arose when an employer demonstrated proper mailing of a notice. These cases are not relevant to this case because the parties dispute whether a hand-delivery occurred.