**Alicia Regenia COX, Plaintiff,**

v.

**AUTOZONE, INC., Defendant.**

**Civil Action No. 97–A–478–N.**

United States District Court,
M.D. Alabama.

Jan. 20, 1998.

Susan S. DePaola, Montgomery, AL, for Plaintiff.

Elmer E. White, Birmingham, AL, Sam Zurik, New Orleans, LA, for Defendant.

## *MEMORANDUM OPINION*

ALBRITTON, Chief-Judge.

This cause is before the court on two motions. Primarily at issue is Defendant's Motion for Summary Judgment filed on October 21, 1997. Plaintiff filed a Response to this motion on November 12, 1997, and included with that response a Motion to Strike a document submitted with the Defendant's summary judgment motion. This motion to strike is also at issue.

The Plaintiff filed this action on April 1, 1997. The Complaint was brought under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*[1] Plaintiff alleges that she took leave under the Act from her job as manager at an AutoZone franchise in Bir-

mingham, Alabama. After returning to work, the company allegedly failed to restore her to an equivalent position (count 1 of complaint) and questioned her attempts to exercise her statutory rights, in such a manner as to lead to a constructive discharge (count 2). Plaintiff asks for lost wages and benefits, interest thereon, liquidated damages, equitable relief including reinstatement, attorneys fees, and any other just and reasonable relief.

For the reasons discussed herein, the motion for summary judgment is due to be GRANTED

## I. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *see also* Fed.R.Civ.P. 56(e). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*

1. Plaintiff filed a proposed amended complaint, on September 22, 1997, which would have added allegations that AutoZone failed to properly notify the plaintiff of her rights under the FMLA.

The amended complaint was disallowed as untimely, by Order of the Court on October 16, 1997. All references to the Plaintiff's Complaint are to the original complaint of April 1, 1997.

*v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates*, 887 F.2d 1493 (11th Cir.1989).

## II. FACTS

In deciding a motion for summary judgment, the evidence presented by the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson*, 477 U.S. at 255. When viewed in the light most favorable to the non-movant, submissions before the court establish the following facts:

The Defendant is a covered employer under the terms of the FMLA, and Plaintiff was its employee from April 1992 until December 1995. *See Defendant's Answer at para. 3 and 6*; 29 U.S.C. § 2611(4). In June of 1995, Plaintiff was promoted to the position of manager of an AutoZone store in Birmingham, Alabama. *See Answer at para. 7.* One month after her promotion, on July 17, 1995, Plaintiff took temporary disability leave because of her pregnancy. She claims, and the company admits, that the reason for her leave qualifies as a serious health condition under the FMLA. *Id. at para. 8*; 29 U.S.C. § 2611(11).[2] While on leave, Plaintiff received the maximum 13 weeks of manager's salary payable under AutoZone's disability pay plan. *Plaintiff's Depo. at 49:11–13; Plaintiff's Exh. E1 (AutoZone Disability Pay Plan)*.

It is uncontested that Plaintiff did not return to work after 12 weeks. Instead, she stayed out of work for 15 weeks, not returning to work until October 31, 1995. *See Plaintiff's complaint at para. 8–10.* After she did return to work, Defendant admits that it returned Plaintiff to the position of assistant manager, making less money, and that she questioned this demotion. *See Answer 12–14.* Defendant contends that the change from manager to assistant manager was lawful because the Plaintiff exceeded the 12 weeks of leave for which FMLA provides job protection and that the Plaintiff's absence exceeded the leave time to which she was entitled. Eventually plaintiff resigned from her position, and claims constructive discharge.

Plaintiff contends that AutoZone never told her that she was using up her 12 weeks of FMLA leave, and that she should be allowed to take all of her employer-provided 13 weeks of disability pay, plus 12 additional weeks of unpaid leave, and be entitled to return to her old position. In effect, she is claiming that her AutoZone-provided leave should run consecutively with her federally-mandated FMLA leave. The Defendant contends that this is not the approach of FMLA, and that its employee handbook specifies that leave taken with disability pay runs concurrently with FMLA leave.[3]

## III. DISCUSSION

A. The Motion to Strike.

Plaintiff has strenuously objected to the court's consideration of Exhibit E to the Defendant's Motion for Summary Judgment, a copy of the AutoZone handbook for employees dated September 1994. If handbooks were printed annually and given to employees around December—as is evidenced by the Plaintiff's submissions of

---

**2.** Defendant also admits that Plaintiff had been at AutoZone for greater than a year and had worked more than 1,250 hours in the previous year. *Id. at para. 1.* These are the two requirements for being an eligible employee under the FMLA. 29 U.S.C. § 2611(2).

**3.** There is a dispute over whether AutoZone is providing 13 weeks of disability "leave" or 13 weeks of disability "pay." At various times in

the deposition of an AutoZone official, he says that the disability pay provided is only "pay." In other words, leave must come from another source, which sources are listed in the AutoZone handbook. As is revealed from the court's use of the word "contend," these disputes do not have to be resolved for the purposes of this summary judgment.

handbook receipts [4]—this would be the handbook in effect at the time Plaintiff took and returned from her leave. Plaintiff has made several arguments to convince the court to strike this document, including lack of authentication. The court does not have to decide the motion to strike, however, as the motion for summary judgment can be fully decided without reference to, or consideration of, the document. Plaintiff's motion to strike is, therefore, DENIED AS MOOT.

## B. Summary Judgment

### *The Family and Medical Leave Act*

█ Under the principles of at-will employment, an employer can fire, treat negatively, criticize, discipline, or do anything else short of an illegal act, to an employee for good reason or no reason at all. Bothered by the raw potential for abuse in this sort of freedom, a number of restrictions on employers have been developed. For example, employees themselves often negotiate contracts which limit the rights of the employer, in exchange for certain restrictions on themselves. Likewise, employees sometimes band together into unions which negotiate labor agreements on behalf of all employees. Congress and various state legislatures also routinely get into the act, passing a number of statutes, such as Title VII, which limit the arbitrary power of employers to act in ways which are thought to be contrary to the public interest.

One of the newer nation-wide restrictions on employers is the Family and Medical Leave Act of 1993. FMLA guarantees certain employees-those who are not part-timers and have been employed by a large employer for more than a year-the benefit of leave time for certain family and medical emergencies. See 29 U.S.C. § 2611(2) (defining "eligible employee").[5] The Act grants these employees a statutory right to take off 12 weeks of any 12 month period, provided that they are doing so for what Congress considers to be a good reason. 29 U.S.C. § 2612. Congressionally enumerated reasons include the (1) birth or adoption of a child, or giving foster care to a child, (2) taking care of a relative with a "serious health condition," and (3) when the employee herself cannot "perform the functions of [her] position" because she suffers from a "serious health condition." 29 U.S.C. § 2612(a).

The Act entitles the employer to certain notice and certification regarding the reason for leave. 29 U.S.C. § 2613. When these requirements are met, however, the Act entitles the employee to full restoration to her position (or an equivalent), and to restoration of her "benefits, pay, and other terms and conditions of employment" upon return from the leave. 29 U.S.C. § 2614(a). The Act also requires that the employer maintain the employee's group health insurance during her absence, as long as the employee does return to work when able. 29 U.S.C. § 2612(c).[6]

Besides placing certain duties on employers, the Act also prohibits employers from a number of actions. 29 U.S.C. § 2615. The provision makes it unlawful for employers to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the Act. 29 U.S.C.

---

**4.** Plaintiff's Exhibit E–2 is a submission of three receipts where Alicia Cox evidenced receipt of an AutoZone handbook and safety booklet. The first receipt was from April of the year that Cox began work with AutoZone. Later receipts were signed in December of 1993 and December 28, 1994. Plaintiff received, therefore, a handbook about seven months before the time that she went out on leave. Plaintiff's argument that Defendant has not produced to her a receipt showing a book received in "1995" is strained. Plaintiff was no longer with AutoZone in December 1995, when the handbook printed in 1995 would have been passed out.

**5.** The Act does not apply to certain federal employees. 29 U.S.C. § 2611(2)(B)(i). It also does not apply to employees who do not work at employers who routinely employ more than 50 people. 29 U.S.C. § 2611(4) (defining covered "employer").

**6.** Employers are also required to post information prepared by the Secretary regarding the Act. 29 U.S.C. § 2619.

§ 2615(a)(1). Likewise, employers are told not to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). Retaliation is also prohibited. The employer is not allowed to discharge or discriminate against anyone who has filed a charge, instituted a proceeding, testified, or otherwise given information in a proceeding. 29 U.S.C. § 2615(b). When the prohibitions of the Act are violated, the Secretary may take action, and the employee herself may file a private suit for specified damages.[7]

The court is faced with a private action pursuant to 29 U.S.C. § 2615 in the present suit. Plaintiff makes two claims. The first is that AutoZone did not properly restore her to the position of manager when she returned to work. The second is that AutoZone harassed her for enforcing her FMLA rights so severely as to amount to constructive discharge. Both of these claims must fail, for the same reason. FMLA did not protect Plaintiff in this situation.

### The Limits of FMLA

■ Plaintiff has misconstrued the purpose of FMLA. She contends as stated in her brief: "that she had available to her, at the commencement of her leave, 13 weeks of paid leave [provided by the employer] **and** 12 weeks of unpaid FMLA leave." *Plaintiff's Motion to Strike and Response to Defendant's Motion for Summary Judgment at 6 (emphasis by Plaintiff)*. Plaintiff is, in effect, converting FMLA from a statute which provides a minimum, a baseline, of federally-mandated unpaid leave, into a statute which mandates an additional 12 weeks of leave for all employees, even those who already have employer-provided leave. This is inconsistent with the text and guarantees of the statute.

FMLA is a "balanc[ing]" act, an attempt to provide employees with some leave, "a reasonable leave," without completely ignoring the legitimate "demands of the workplace." 29 U.S.C. § 2601. It limits the reasons that employees may take leave, and even in those cases it only establishes that the "employee shall be entitled to a **total** of 12 workweeks of leave during any" year. 29 U.S.C. § 2612 (emphasis by court). Leave may be unpaid, and "if an employer provides paid leave for fewer than 12 workweeks ... the additional weeks of leave necessary to attain the 12 workweeks ... may be provided without compensation." 29 U.S.C. § 2612(d)(1). In effect, the Act sets a minimum only, a "total" of 12 weeks which employers must provide.

■ Plaintiff bases her contention that FMLA requires that she be given 12 unpaid weeks in addition to the paid weeks already provided by her employer on 29 U.S.C. § 2612(d)(2)(B). This section defines the relationship between FMLA leave and paid employer-provided leave when taken for a "serious health condition."[8] It provides in full that

> An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick

7. The Secretary of Labor has the power to investigate, 29 U.S.C. § 2616, bring lawsuits, 29 U.S.C. § 2617, and promulgate regulations, 29 U.S.C. § 2654. Private enforcement is also possible; employees may maintain a private civil action if the employer violates the prohibitions of § 2615. Class actions are possible, § 2617(2), but the Secretary may take them over if he chooses, § 2617(4). In a private action, which is at issue here, the employee may recover damages in the amount of lost compensation, benefits, or other sustained losses (such as paying for someone else to care for a child). 29 U.S.C. § 2617(1). All of these amounts are subject to interest, and the total is subject to being doubled with an award of liquidated damages, if the employer cannot show that his action was in good faith and based on reasonable grounds. 29 U.S.C. § 2617(a)(1)(iii). Equitable relief may also be awarded, and it is mandated that a court award attorney's and expert's fees, and other costs when the employee wins. 29 U.S.C. § 2617(3). There is also a "Commission on Leave" set up by the statute to study any problems or successes of the act. 29 U.S.C. § 2631—2636.

8. As noted in the facts, both sides agree that Plaintiff's leave was taken for a serious health condition.

leave of the employee for leave provided [for a serious health condition] for any part of the 12–week period of such leave under such subsection, except that nothing in this subchapter shall require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave.

The provision exists so that the employee may not be told that leave must be taken as unpaid, when she has an alternative employer-provided paid leave available. Here, Plaintiff elected to take her paid leave, drawing a pay check for 13 of the weeks that she was gone. Now, she attempts to use this provision to stand the FMLA on its head, arguing that it gives to her a presumptive right to take 12 weeks of unpaid leave, even though she has already received 13 weeks of paid leave.

### FMLA Regulations

Plaintiff's position is not founded entirely on the language of § 2612(d)(2)(B), however. She also looks to regulations adopted by the Department of Labor to support her position. Congress mandated in 29 U.S.C. § 2654 that the "Secretary of Labor shall prescribe such regulations as are necessary to carry out [the general provisions of FMLA, 29 U.S.C. § 2611— § 2619] not later than 120 days after February 5, 1993." The Secretary has adopted such regulations.

The regulations at issue pertain to employer notice to the employee regarding the nature of her leave. As noted above, 29 U.S.C. § 2612(d)(2)(B) provides, in pertinent part, that

An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided [for a serious health condition] for any part of the 12–week period of such leave under such subsection . . . .

The provision exists, at least in part, to grant the employee the right to be paid for FMLA-qualifying leave, where the employee would otherwise have the right, pursuant to contract, to take paid time off from work. Consistent with this, the regulations provide, like the statute, that "FMLA permits an eligible employee to choose to substitute paid leave for FMLA leave." 29 CFR § 825.207(a). Indeed, that is what the employee apparently has done in this case, taking paid disability leave instead of unpaid FMLA leave.

The regulations also make clear that FMLA leave for disability would include leave for the birth of a child: "[d]isability leave for the birth of a child would be considered FMLA leave for a serious health condition and counted in the 12 weeks of leave permitted under FMLA." 29 CFR § 825.207(d)(1). Further language of § 825.207(d)(1) even provides that the "provision" regarding substitution of paid leave is "inapplicable" where there is paid "leave pursuant to a temporary disability benefit plan" available. This last provision is unclear, but it implies that it is presumed that paid disability leave for the birth of a child would run concurrently with unpaid FMLA-guaranteed leave.

Other regulations clearly state the opposite, however. The Secretary of Labor has seized upon the second option in the statute, the "employer may require" option, to give a different meaning and scope to this provision of FMLA. Consistent with the statute, 29 CFR § 825.207(d)(1) states that an "employer may designate the leave as FMLA leave and count the leave as running concurrently." Rather than simply viewing this as an option for the employer, however, the regulations interpret the statute as placing the burden on the employer to tell the employee that she is using FMLA leave. If the employer fails to so inform the employee, the employee retains the option of taking an additional 12 unpaid weeks of FMLA leave.

Section 825.208 begins with the blanket statement that "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the

employee as provided in this section." 825.208(a). Failure to inform the employee carries stiff consequences. If an employer fails to prospectively inform the employee that she is using her FMLA leave, then "none of the absence preceding the notice to the employee of the [FMLA] designation may be counted against the employee's 12–week FMLA leave entitlement." 825.208(c). Put alternatively, "[i]f an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." 825.700(a).[9]

Any internal inconsistencies of the regulations are not what bother this court the most, however. Indeed, the regulations are clear enough in one respect: they require that the employer must inform the employee anytime the employee is using up FMLA leave, else the employee will be entitled to take 12 additional unpaid weeks off from work.[10] This is inconsistent with a fair reading of FMLA; and this inconsistency is what really concerns the court.

***Problems with the present regulations.***

■ Congress expressly delegated authority to the Secretary of Labor to promulgate regulations pursuant to FMLA. 29 U.S.C. § 2654. In this situation, as noted by the Fifth Circuit when addressing the Secretary's FMLA regulations, such regulations " 'are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.' " *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 763 (5th Cir. 1995), quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). This court agrees that that

is the proper standard of deference. Nevertheless, the court also is fully cognizant that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron*, 467 U.S. at 843 n. 9.

■ In the present case, the Defendant has not directly asked the court to find the regulations inconsistent with FMLA. Indeed, the Defendant in its reply attempts to get the court to read around the regulations. In any case, however, the regulations definitely impose a burden on the employer to tell the employee when she is using FMLA leave, or else the employee reserves the right to that leave. Even given the ambiguity of the regulations at certain points, there is no getting around that burden. Because the Plaintiff raises the regulations, the court must decide whether to apply them.

The Defendant has clearly raised the issue to the court, however, of Congress' intent in the FMLA. Defendant argues that FMLA "only protects one's job during 12 weeks of leave." *Defendant's Memorandum in Support of Motion for Summary Judgment at 1.* Indeed, as noted earlier, the statute paints itself as a "balanc[ing]" act, an attempt only to provide employees with "a reasonable leave" while still respecting the "demands of the workplace." 29 U.S.C. § 2601. Also, as noted by the court, the central guarantee of the statute defines itself as an "entitle[ment] to a total of 12 workweeks of leave during any" year. 29 U.S.C. § 2612 (emphasis by court). In cases where the employer provides leave short of this, such as where the employer might provide only a few weeks of

---

9. Section 825.207(f) makes some attempt to clarify what should happen when there is no notice either way as to the designation of the leave. There, the Secretary's only conclusion is to state that "the employee will remain entitled to all the paid leave which is earned or accrued under the terms of the employer's plan." 825.207(f). The Secretary says nothing about the situation where the employee takes her paid leave first, and attempts to stack unpaid leave on top of that for the same reason. Possibly, therefore, the Secretary recognized that there was a problem with saying so, given a faithful reading of the statute.

10. By saying the regulations are "clear enough" the court does not intend to imply that they are absolutely clear in all respects. Indeed, the regulations never directly address the situation where an employee takes her paid leave for disability, and then attempts to claim a right to take an additional amount of time of unpaid leave, up to 12 weeks, even though they do address, as noted in the previous footnote, the situation where the employee takes unpaid leave first.

paid leave, FMLA adds on "the additional weeks of leave necessary to attain the 12 workweeks." 29 U.S.C. § 2612. And that may even be "provided without compensation." 29 U.S.C. § 2612. In effect, the act sets a minimum only, a "total" of 12 weeks which employers must provide.

The reading of FMLA to guarantee only a total of 12 weeks is consistent with the general nature of the statute. It is not meant to supersede other sources of leave, such as employer-provided leave or state-law-provided leave. The statute specifically states that it should not be "construed to supersede any provision of any State or local law that provides greater family or medical leave rights." 29 U.S.C. § 2651. Likewise, and very relevant to this case is 29 U.S.C. § 2652, which provides

> Nothing in this Act ... shall be construed to diminish the obligation of an employer to comply with ... any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established under this Act.

Conversely, the same section also provides that

> The rights established for employees under this Act or any amendment made by this Act shall not be diminished by ... any employment benefit program or plan

29 U.S.C. § 2652 (references to collective bargaining agreements, not relevant here, are omitted). In addition, the Act also seeks in 29 U.S.C. § 2653 to be an "[e]ncouragement of more generous leave policies." That provision reads

> Nothing in this Act or any amendment made by this Act shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act...

29 U.S.C. § 2653.

■ FMLA is, in effect, nothing more than a baseline. Where an employer such as AutoZone exceeds that baseline, by providing not only more leave than FMLA, but also paid leave, the employer should not find itself sued for violating FMLA. Notwithstanding any ambiguity that the Secretary of Labor could find in the statement that an "employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under" the FMLA, 29 U.S.C. § 2612(d)(2)(B), there is not enough ambiguity in FMLA to justify the regulations which the Secretary has written.

In the case of an employer requiring substitution, those regulations convert FMLA into an act which always provides an additional twelve weeks of leave, unless the employer specifically notifies the employee prospectively that she is using up her FMLA leave. For example, an employee who takes 13 weeks of paid leave from AutoZone for a disability would be guaranteed an additional 12 unpaid weeks unless AutoZone makes sure to send the employee a notice that her FMLA time is being exhausted. This is not consistent with the purposes or the language of the Act. Congress only meant to mandate a minimum of 12 weeks of leave for employees at large companies throughout the United States. Congress has never said, and indeed it would violate its stated purpose of "accomodat[ing] the legitimate interests of employers," to say that employees could be entitled to more than 12 weeks leave.[11]

FMLA never provides that an employer must retain an employee who works fewer than 40 weeks a year. The provisions routinely deny a purpose to interfere with leave policies which grant greater leave rights. Indeed, the statute is filled with self-imposed limitations. As noted earlier, it only applies in certain enumerated circumstances. The statute also limits the right of employees to take leave where both spouses are employed by the same employer, 29 U.S.C. 2612(f). In addition, it allows employers to deny restora-

---

11. Of course, an employer is free to decide not to exercise its right to require substitution, if it wishes to do so. The statute leaves that choice to the employer. It does not grant additional rights to an employee is the employer does not exercise its decision in a certain manner.

tion of benefits to certain key, higher-paid employees when "necessary to prevent substantial and grievous economic injury to the operations of the employer," as long as notice is given. 29 U.S.C. § 2614(b). Some employees, such as those employed by "local educational agencies," are even set apart by the Act. 29 U.S.C. § 2618. To read a statute which is so concerned with limitations, so concerned with being non-intrusive, as justifying regulations which would provide leave greater than its text, is to stand the statute on its head.

### Decisions of other District Courts

Several other district courts have confronted issues similar to the one presently before the court. Three of the courts focused on the statutes, the Congressionally-adopted text of FMLA. Interestingly enough, these courts decided that the plaintiff would lose, holding that there was no guarantee to leave greater than 12 weeks. The courts which focused on the regulations, without looking to the purpose of the statute, held that leave greater than 12 weeks must be provided where the employer's notice is deficient.

In *Haggard v. Farmers Ins. Exchange,* 1996 WL 146048 (D.Or.1996), a district court in Oregon was faced with a plaintiff who had been given 6 weeks of paid disability leave for a pregnancy, followed by 8 weeks of unpaid leave to care for the child. The court held, without looking to the regulations, that based on FMLA and its substitution provisions, that plaintiff had received all she was entitled to. The FMLA simply "requires that an employer provide an employee with unpaid leave up to twelve weeks." Where 14 total weeks were provided, the Defendant "did not violate the FMLA." *Id.* at *3. Summary judgment was granted for the employer.

Discussion of the issue of notice is not prominent in *Haggard.* There, the employer did not provide the employee with notice that she was using FMLA leave until after she

had used approximately 6 weeks of leave, and was seeking an additional 8 weeks. *Id.* at *2. The court never addresses this as a problem. Rather, the court counts the 6 weeks against the employee in granting summary judgment to the employer. *Id.* at *3.

Likewise, in *Kur v. Fox Valley Press, Inc.,* 1997 WL 89140 at *3–*4 (N.D.Ill.1997), a plaintiff had already taken a twelve-week leave and sought to take an additional leave within the same 12–month period. The court never addresses the issue of whether the employer had designated the first leave as FMLA leave at the time it was taken in dismissing the employee's case. Rather, the court reads the statute to say that

> FMLA allows 12 weeks of leave in any 12–month period. We take judicial notice of the fact that Plaintiff's first leave period was 12 weeks in length. Therefore, she did not have a FMLA right to the second leave period. Any harassment that resulted from her plans to take a second leave is not actionable under the FMLA.

*Id.* at *4. The court dismissed the claims that she was entitled to more than 12 weeks, and her claims that she was retaliated against.[12]

*Stopka v. Alliance of Amer. Insurers,* 1996 WL 717459 (N.D.Ill.1996) involved the same district, but a different judge than *Kur.* In *Stopka,* the court granted summary judgment to the defendant on an FMLA claim. *Id.* at *8. The court noted that plaintiff's argument was somewhat vague, but it appeared that she was arguing that the employer had to give her more than 12 weeks leave, because the employer had caused the disability which required leave. *Id.* While the factual posture of the case is unclear, the court could not have been any clearer in its interpretation of the FMLA:

> Under the FMLA, an eligible employee receives twelve weeks of unpaid leave in any twelve month period for certain family and medical purposes without risking his or her job. 29 U.S.C. §§ 2612, 2614. An

---

**12.** The court does go on to say that any harassment which arose from her taking the first FMLA

leave would be protected.

employer has no responsibility to restore a person's job after that twelve week period. *Id.*[13]

By contrast, decisions which focus on the regulations only, without looking to the Congressional purpose of the statute, find a regulatory regime which may require an employer to grant an employee more than 12 weeks of leave. In *Dintino v. Doubletree Hotels Corp.*, 1997 WL 717208 (E.D.Pa.1997), the court decided that a plaintiff was entitled to an additional 12–week FMLA leave even though she had already taken a 12–week employer-provided maternity leave. The court focused on 29 CFR § 825.208 which states the employer's responsibility to designate leave as FMLA-qualifying, and 29 CFR 825.301(b)(1)(i) which lists the 825.208 notice as one of a type that employers must furnish. Construing the regulations, the court found that employers have "to provide the plaintiff with written notice, and such notice would be expected to include, if applicable, a statement that the plaintiff's leave would be treated as FMLA leave." *Id.* at *2. It is important to note that the court in that case was dealing with an employer, at least an employer's supervisor, who thought that the two types of leave could be added together. *Id.*

Likewise, in *Viereck v. City of Gloucester City*, 961 F.Supp. 703, 705 (D.N.J.1997), the employer terminated the employee after she did not return after a twelve-week absence. The court held that the employer did not properly terminate the employee because she still had FMLA leave remaining. The court dated the start of employee's 12 weeks of FMLA leave not from the date that she was first absent because of a serious medical condition, but from the date that the employ-er first gave the employee notice pursuant to the regulation that her leave qualified as FMLA leave. *Id.* at 708. Once again, the court's decision pays much attention to 29 CFR § 825.208, and very little attention to the structure or language of the statute.

No decision discovered by this court, therefore, directly addresses the question of whether the regulations at issue here are in conflict with FMLA. Those which address FMLA only, however, definitely find a statute which cannot be reconciled with the prospective notice requirements of the regulations. This may be the first court to notice the conflict, but it is not the first to construe the statute or the regulations as the court construes them. There is a conflict which must be addressed.

### Other Problems with FMLA Regulations

The court realizes that finding a regulation to be inconsistent with a statute authorizing regulations is no light task. Indeed, the Secretary of Labor knows much about the workplace which is beyond the knowledge of this court. The court takes courage, however, from its own ability and duty to interpret the laws. In addition, the court also takes heart from the fact that other courts have found the Secretary's FMLA regulations to be beyond the reach of the statute. One court has already held a regulation to be contrary to the intent of Congress. Another court has had to resort to calling a regulation a truism in order to avoid confronting the question of whether the regulation violated the intent of Congress.

*Wolke v. Dreadnought Marine, Inc.*, 954 F.Supp. 1133, 1134 (E.D.Va.1997), involved an employee who had not worked for 12

---

**13.** In *Stopka*, the court does not focus at all on employer-provided notice in its application of FMLA. *Id.* at *8. The facts do, however, reference statements made by the employer regarding its position that it would not guarantee the employee's position if she did not return after exhausting her FMLA leave. *Id.* at *2. This notice was given on both occasions after the employee had started her leave. *Id.* Also, on both occasions, the notice was apparently applied retroactively to count all of that leave period against the employee's total FMLA entitlement. *Id.* If the court had addressed the regulations, this may have been a problem. Regulations would specify that none of the leave before the notice could be counted against the employee's FMLA entitlement, if the employer knew of the reason for the leave. 29 CFR § 825.208(c). The facts are not clear as to what the employer knew, but it is noted that the employee's leave was "disability leave for depression." *Stopka* at *2. In any event, the court did not focus on the regulations. Summary judgment was granted to the employer based on the interpretation of the statute.

months prior to invoking his FMLA leave. Plaintiff argued, nevertheless, that he had an FMLA claim pursuant to the regulations. *Id.* Plaintiff's argument was based on 29 CFR § 825.110(d) which states that an "employee will be deemed to be eligible [for FMLA leave] if the employer fails to advise the employee that the employee is not eligible." *Id.* at 1134. The case is therefore analogous to our own: the plaintiff argued that leave which is not covered by the text of FMLA is covered because of the regulations. The court held the regulation to be invalid, applying the *Chevron* analysis and finding that the regulation "impermissibly contradicts the clear intent of Congress to restrict the class of employees eligible for FMLA." *Id.* at 1135.[14] The court believed that the Secretary of Labor had overstepped the bounds of the separation of powers, adopting a regulation which contradicted Congress's law, and imposing an impermissible judicial rule of decision. *Id.* at 1137. In effect, the court felt compelled to step up and not just "rubber-stamp" an administrative decision. *Id.* at 1137. Rather, the court felt that review of the regulation was "always properly within [its] province," and to not do so would be to "abdicate [its] responsibility ... to fully review such administrative decisions." *Id.,* quoting *National Labor Relations Board v. Brown,* 380 U.S. 278, 291–92, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965).

One prior plaintiff attempted to use the regulations to convert the FMLA from a regulatory baseline of 12 weeks of leave for certain employees into a "federal cause of action ... to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA." *Rich v. Delta Air Lines, Inc.,* 921 F.Supp. 767, 773 (N.D.Ga.1996). In *Rich,* the plaintiff argued that because her employer provided benefits to employees not covered by the FMLA, she could use FMLA to enforce those employer-provided benefits. *Id.* She based her argument on 29 CFR § 825.700 which reads "An employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA." *Id.,* quoting the regulation. The court did not strike down the regulation as contrary to Congressional intent. Rather, the court held that the plaintiff's interpretation-which would create under FMLA a "federal cause of action ... to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA"-could not stand. *Id.* The court interpreted the regulation to be a "truism," one which merely recognized that an employee would have a contractual action in such a case. *Id.* In any event, even if FMLA did intend to create such a cause of action, that would be invalid under the FMLA, because the statute does not empower the Secretary to create such an action. *Id.* at 774.

This court is not saying, of course, that the Secretary overreached in all respects. Indeed, the Fifth Circuit in *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758 (5th Cir.1995) directly addressed whether the regulation which states that an employee does not have to invoke the statute by name in order to invoke the protection of the statute violated the Secretary's reach. The Fifth Circuit rejected the argument that it did. Nevertheless, the court here is faced with a regulation which not only clarifies an ambiguous provision of FMLA, but construes FMLA so as to protect leave which the statute is not meant to protect. This the statute and the law will not allow.

### Legislative History

In addition, there is no indication in the legislative history that the substitution provi-

---

**14.** In its decision, the *Wolke* court noted that there was much dissension over how to apply the *Chevron* test. The court first looked to the so-called first prong of *Chevron,* whether the regulation was " 'directly contrary' to Congress' intent." *Id.* at 1136. The court held that it was even though it did not "flatly contradict the plain wording of the statute." *Id.* As to the second prong of *Chevron*-which is used when Congress has left some ambiguity which the court did not think was evident here-the court did not use this analysis. Nevertheless, the court noted that the regulation would fail this analysis because it was "manifestly contrary to the statute." *Id.* at 1137 n. 6.

sions of 29 U.S.C. § 2612(d) were meant to have a meaning which would override all of the other provisions of FMLA (which it would do if it gave an employee a right to take protected leave of greater than 12 weeks). In the Committee report, prepared under the direction of Chairman Kennedy, it is explained that

> The purpose of section 102(d) is to provide that specified paid leaves which have accrued but have not yet been taken, may be substituted for the unpaid leave under the act in order to mitigate the financial impact of wage loss due to family and temporary medical leaves. The employer may not trade shorter periods of paid leave for the longer periods of unpaid leave prescribed by the act. Section 102(d) assures that an employee is entitled to the benefits of applicable paid leave, plus ***any remaining leave time*** made available by the act on an unpaid leave.

Senate Comm. on Labor and Human Resources, Family and Medical Leave Act of 1993, S.Rep. No. 103–3, 103d Cong., 1st Sess. 3 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 30 (emphasis provided). The last sentence indicates that FMLA only applies where there would be "any remaining leave time" up to 12 weeks, after the employer-provided leave is exhausted. That same Committee Report also contains a section of discussion which refers to the Act as a "minimum labor standard." *Id.*, 1993 U.S.C.C.A.N. at 6.

Section 2612(d) is intended so that the employer may not force the employee to take unpaid FMLA leave when the employee has paid-employer-provided leave which is available. The "employer may require" language

is intended so that the employer may, likewise, force the employee to take paid-employer-provided leave, such as employer-provided sick leave, first; rather than allowing the employee to use unpaid FMLA leave, and reserve the employer-provided leave for later. This may allow the employer to keep down the total amount of leave taken.[15] If Congress had wanted the simple phrase "employer may require" to have a meaning which would override the rest of the FMLA which provides only a minimum standard 12 weeks, Congress would have said so. Where Congress wanted explicit notice provisions with significant consequences, Congress provided for them. 29 U.S.C. § 2613 is just such a provision, finely detailing the requirements of employees and employers when a sickness is qualified as an FMLA reason.

### Resolving the Conflict

The court finds a clear intent of Congress to protect only those workers who take 12 or fewer weeks of leave. FMLA is not meant as a required addition to all employer-provided leave, but merely as a guarantee or required supplement if the employer provides fewer than 12 weeks. The regulations of the Secretary would convert FMLA into a broader scale regulatory regime of employer-provided leave. This is not countenanced by the statute. To allow it would be to allow the Secretary of an executive department to override the will of Congress as expressed in the statute, which was signed into law by the President.

This court's decision would hold whether the court construes FMLA as clear, and says that the regulation is clearly contrary to the statute; or whether the court views FMLA

---

**15.** For example, say that Employer X provides its employees with 3 weeks of leave per year. The leave is not specified for any purpose, rather the employee may take it for any reason-sickness, vacation, personal reasons, etc.-and the employee need provide no excuse. When Employee Y needs 3 weeks care for a sick parent, the Employer X may require Employee Y to exhaust his employer-provided leave, first. That way, if the employee needs further time away from his job during the remainder of the year, the employee will need an FMLA-qualifying reason. The employee will not just be able to take vacation at his own election. The "employer may require" language, therefore, provides the employer with yet another protection. An employer who prepares to give its employees only 3 weeks of leave a year, may rely on that to some degree. The employee will need an FMLA-qualifying reason to exceed the 3 week period. Until all the employer-provided leave is taken, the employee will not be able to count leave as FMLA, and reserve all of the employee's other rights. This may sound harsh, but it should be remembered that it is only an option provided to employers under the Act. Employers may choose to do otherwise.

as somewhat ambiguous, and says the regulation is manifestly contrary to the statute. *See Jaramillo v. I.N.S.*, 1 F.3d 1149 (11th Cir.1993) (discussing two step analysis of *Chevron*). Either way the Secretary has overstepped his bounds. Congress did not leave a "gap" which the Secretary has filled with a "reasonable construction." *Id.* at 1153. Rather, the Secretary has added requirements which not only go beyond those of the statute, but which are inconsistent with the stated purpose of the statute and which would grant entitlements which were not given by Congress.

FMLA provides protections to only certain employees of certain employers, and then only when the employee is taking 12 or fewer weeks of leave. Plaintiff does not have a case under FMLA, either for not restoring her to her position or for discriminating against her for taking leave. Plaintiff had no rights under FMLA because she admittedly took more than 12 weeks of leave, collected disability pay while doing so, and her employer counted that paid leave against her FMLA entitlement. She has no claim in this situation no matter what the regulations say. Defendant's Motion for Summary Judgment is due to be GRANTED.

## IV. CONCLUSION

In determining that AutoZone is entitled to summary judgment, the court has not considered the handbook proffered by the Defendant. The Plaintiff has questioned its authenticity, which could create a fact issue. Also, it if were considered, there would be a question as to whether it satisfied the requirements of the regulations which the court has found to be inconsistent with the statute. In view of the court's decision regarding the regulations, it is not necessary to consider the handbook.

Also, the court has not based its decision on holding solely that the Plaintiff elected to substitute paid disability leave for unpaid FMLA leave, although acceptance of pay for 13 weeks under the employer's disability pay plan would certainly seem to constitute such

an election. In addition to that, however, the employer has required such a substitution, clearly doing so when the Plaintiff returned to work. The Regulations' requirement that an employer must exercise its right to require substitution of accrued paid leave for unpaid FMLA leave by giving specific prospective notice to the employee that the paid leave will count against her FMLA entitlement would convert a right of an employer into an entitlement of an employee. It would grant an employee a right to more than 12 weeks off from work, with the right to be reinstated unless the employer jumps through certain hoops prescribed by the Secretary. This is a paternalistic approach which is clearly beyond the language and intent of the FMLA.

Congress guaranteed certain employees that they would be able to take time off from work for certain reasons, a total of 12 work-weeks in any one year. While an employer is free to grant its employees more than that, the Secretary of Labor is not. To the extent that the regulations would entitle an employee to more than 12 workweeks of leave in any one year if the employer fails to give prospective notice that an absence from work is being counted against FMLA entitlements, they are invalid and unenforceable.

In this case, the undisputed evidence shows that the Plaintiff was paid and accepted 13 weeks of pay for a reason which qualifies for FMLA leave. Her employer charged 12 of those weeks against her Congressionally mandated FMLA entitlement. The FMLA does not require the employer to give her any more. She was allowed to return to work, but nothing in the FMLA entitles her to reinstatement to her old position. She has no claim under the FMLA and the Defendant is entitled to summary judgment.