Angela D. COVEY, Plaintiff,

v.

METHODIST HOSPITAL OF DYERSBURG, INC. and METHODIST HOSPITAL SYSTEMS, INC., Defendants.

No. 97–2386–TUA.

United States District Court,
W.D. Tennessee,
Western Division.

June 25, 1999.

S. Carolyn Howard, Phillips Howard & Grubb, Memphis, TN, for Angela D. Covey, plaintiff.

David P. Jaqua, J. Wilson Eaton, III, The Kullman Law Firm, Memphis, for Methodist Hospital of Dyersburg, Inc., Methodist Health Systems, Inc., defendants.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

TURNER, District Judge.

Plaintiff, Angela D. Covey, filed this action against defendants, her former employers. In its previous order, the court granted defendants' motion for summary judgment as to the plaintiff's claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the Tennessee Handicap Act, Tenn.Code Ann. § 8–50–103. The court denied defendants' motion for summary judgment as to plaintiff's claims under the Family and Medical Leave Act ("FMLA"). Presently before the court are cross-motions for summary judgment on that remaining claim. For the following reasons, the defendants' motion is granted and the plaintiff's motion is denied.

### I. *Summary Judgment Standard*

The moving party is entitled to summary judgment where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court's function is not to weigh the evidence or judge its truth; rather, the court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case will determine what issues of fact are material. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

A summary judgment movant "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins*

*v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). Once met, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue of triable fact. Fed.R.Civ.P. 56(e). To meet this burden, the non-movant must present sufficient countervailing evidence such that a jury could return a verdict favorable to the non-moving party. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

### II. *Background*

The facts of the case are addressed extensively in the court's previous order and will not be repeated in total. However, for the sake of clarity, the court provides the following brief summary of the facts underlying this case.

Covey began working for the defendants in 1991 in the Material Services division of Methodist Hospital as a Purchasing Agent. In 1992, plaintiff was diagnosed with multiple sclerosis ("MS"). This condition causes her constant fatigue and she periodically suffers flare-ups, which affect her sight, sense of touch and motor abilities, including her ability to walk. In February of 1996, plaintiff had a severe MS flare-up that caused her to miss almost a month of work. Her doctor allowed her to return to work in March of 1996, but placed her on a restricted schedule of four day, thirty-two hour weeks.

Plaintiff's return-to-work form was ambiguous as to whether her restrictions were permanent. Cathy Hulgan, the Hospital Controller, believed the restrictions were temporary and she allowed plaintiff to continue working in the Purchasing Agent position on a reduced schedule. While plaintiff was working this reduced schedule, Hulgan commissioned a study of the Purchasing and Accounts Payable departments. Based on that review, the Purchasing Agent position took on some additional responsibilities.

Defendants subsequently asked for a clarification on the duration of plaintiff's restrictions. In the first week of August, plaintiff's doctor clarified that her restric-

tion to four day weeks was permanent. Hulgan met with plaintiff and told her that the reorganized Purchasing Agent position could not be performed on a four day a week basis. Plaintiff asked for the opportunity to prove she could perform the duties under her restricted schedule, but her request was denied.

The defendants offered plaintiff a position as a Payroll Clerk that could accommodate her restricted work schedule. They told plaintiff that this job would last until her FMLA leave time expired in January of 1997, at which time defendants would assist her in finding a job that accommodated her need for a reduced schedule. Although defendants intended to pay plaintiff at the same rate she was making as a Purchasing Agent, plaintiff does not remember being told this fact. Plaintiff told defendants that while she was not concerned with the monetary issues of the new job, she felt going from a Purchasing Agent to a Payroll Clerk was demeaning. She therefore declined to accept that position and requested an exit interview.

### III. *Analysis*

Plaintiff claims that defendants violated the FMLA in three ways: first, by failing to reinstate her to her previous position as a Purchasing Agent; second, by failing to properly inform her of her rights under the FMLA; and third, by failing to abide by its own corporate leave policies. The court holds that all three contentions are without merit.[1]

### A. *Failure to Reinstate*

The FMLA provides that once an employee returns from FMLA leave, the employer must reinstate her in her previous position or in an equivalent position. 29 C.F.R. § 825.214(a). Plaintiff argues that defendants violated the FMLA by not reinstating her to the Purchasing Agent position. However, where the employee will be taking recurring intermittent leave, the FMLA allows an employer to transfer an employee to any "available alternative position for which the employee is qualified and which better accommodates recurring periods of leave than does the employee's regular position." 29 C.F.R. § 825.204(a); 29 U.S.C. § 2612(b)(2). Once the need for intermittent leave has ended, the employer must reinstate the employee back in her original position or in an equivalent position. 29 C.F.R. § 825.214(a).

■ In this case, however, it is undisputed that plaintiff's restrictions are permanent. Thus, defendants are entitled to transfer plaintiff permanently to a position that better accommodates her reduced leave schedule and the right to reinstatement simply never arises. Defendants' determination that the Payroll Clerk position could better accommodate plaintiff's recurring leave and their subsequent decision to transfer her is, therefore, specifically authorized. The court holds that summary judgment against the plaintiff is appropriate on her failure to reinstate claim.

### B. *Failure to Inform*

■ Plaintiff next argues that defendants failed to properly provide her with information on her rights under the FMLA. In order to succeed on an FMLA failure to inform claim, the plaintiff must show (1) that defendants failed to correctly inform her of her FMLA rights; and (2) that failure caused her to forfeit protections provided by the Act. *See Mora v. Chem–Tronics, Inc.,* 16 F.Supp.2d 1192, 1227 (S.D.Cal.1998); *Lacoparra v. Pergament Home Ctrs., Inc.,* 982 F.Supp. 213, 220 (S.D.N.Y.1997); *Jeremy v. Northwest Ohio Development Ctr.,* 33 F.Supp.2d 635, 639 (N.D.Ohio 1999). Plaintiff alleges that when defendants offered the Payroll Clerk position, they incorrectly told her that her

---

1. In her response to defendants' second motion for summary judgment, plaintiff also tries to put forth a wrongful termination claim under the FMLA. The court addressed this contention in its previous order and rejected it for the reasons set forth therein. *See* March 15, 1999 Order, at 14.

leave time would end in January of 1997, at which time she would be placed on unpaid personal leave and the hospital would attempt to find her another position in the Methodist system. Plaintiff claims that in actuality, she had sufficient FMLA time to last the entire year. She argues that defendants' inaccurate statements caused her to reject a job that she might otherwise have found acceptable.[2]

The court's first task, therefore, is to determine whether the defendants were incorrect in stating that Covey's FMLA leave time would expire in January 1997. The FMLA entitles employees to twelve weeks, or sixty days, of leave. 29 U.S.C. § 2612. It is undisputed that between February 13 and August 3, 1996, the plaintiff took forty days of leave. Defendants argue that with twenty days of leave remaining when Covey resigned, using one day per week, plaintiff would have used all of her leave time by January 1997.

Conversely, plaintiff argues that since she was not informed that her leave was being charged as FMLA qualifying until August 5, 1996, the forty days she took before that time cannot be counted as FMLA leave. Thus, with sixty days of FMLA leave, she had sufficient FMLA leave to take one day off a week for the entire year. At the end of the year, she would be eligible for another sixty days.

■ According to the regulations, plaintiff is correct. If an employer fails to designate leave as FMLA leave, that leave may not count against the employee's FMLA entitlement. 29 C.F.R. §§ 825.208(c) and 825.700(a). The employee would, therefore, be entitled to a full sixty days of leave time after being notified that the leave would be counted as FMLA, regardless of how much leave had already been taken. Defendants acknowl-

edge these regulations, but cite *Cox v. Autozone, Inc.,* 990 F.Supp. 1369 (M.D.Ala. 1998), for the proposition that these regulations are arbitrary and capricious.

In *Cox,* the employee was absent for work for fifteen weeks. When she returned, she was demoted. The employer claimed the demotion was lawful because the employee had exceeded the twelve weeks of FMLA protection. The employee contended that because she was never told she was being charged with FMLA leave, she was entitled to use up her thirteen weeks of employer-provided disability leave before tapping into her FMLA leave.

The *Cox* court placed a great deal of emphasis on the fact that the FMLA was intended to be balancing act between the interests of employees in having time off to address emergencies and the interests of the employer in having an orderly and profitable workplace. *See id.* at 1373. It characterized the FMLA as a "baseline" of twelve weeks of leave, below which no covered employer may go. *Id.* at 1376. Thus, if an employer only provided its employees with four weeks of leave, the FMLA would provide an additional eight. The regulations, on the other hand, indicate that an employer could provide twelve weeks of leave and if it failed to indicate that leave was FMLA leave, it would be required to provide an additional twelve weeks. The court held those regulations contradicted the statute, which merely mandates a minimum of twelve weeks of leave. *Id.* at 1376–77.

This court agrees with the holding of *Cox.* The FMLA clearly states that employees shall be entitled "to a total twelve workweeks of leave" during any twelve month period for, among other things, a serious health condition. 29 U.S.C. § 2612. Twelve weeks is the minimum an

**2.** Essentially, plaintiff's argument is that since defendants tied the existence of the Payroll Clerk job to remaining FMLA leave and then stated the FMLA leave would run out long before it actually would, the Payroll Clerk's position looked much more temporary and, therefore, less palatable then it actually might otherwise have appeared. Thus, she claims she resigned without knowing that the defendants would have had to provide a job well beyond January 1997.

employer must provide, but it is also the maximum that law requires. While employers are free to go beyond that twelve week minimum, *see* 29 U.S.C. § 2653, they are not required to do so. The regulations create rights which the statute clearly does not confer. If an employer provides an employee with four weeks of leave to deal with a medical emergency without informing the employee the leave is being counted towards their FMLA allotment, according to the regulations the employee gets another twelve weeks of leave. Thus, while the statute only requires the employer to provide twelve weeks of leave, under the regulations the employer could potentially be forced to provide much more. When Congress decided to ensure that all employees would receive twelve weeks of leave, it performed a balancing of the interests of employers and employees. *See* 29 U.S.C. § 2601(b)(1). Congress having performed that act, the Department of Labor is not free to alter the dictates of the statute.

■ The court acknowledges that administrative regulations are entitled to substantial deference. *See Ohio v. Ruckelshaus,* 776 F.2d 1333, 1339 (6th Cir.1985) (holding that an agency's construction of a statute it is charged with enforcing must be deferred to unless it is plainly unreasonable); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."). However, if Congress' intent is clear, the court need not defer to the agency because both the agency and the court "must give effect to the unambiguously expressed intent of Con-

gress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778 (footnote omitted). In this case, the regulations directly contradict the statute by increasing the amount of leave that an employer must provide. The court holds that the regulations are invalid insofar as they purport to require the employer to provide more than twelve weeks of leave time. *See Cox,* 990 F.Supp. at 1380–81; *but see Ritchie v. Grand Casinos of Mississippi, Inc.,* 49 F.Supp.2d 878 (S.D.Miss.1999) (rejecting *Cox* and finding that 29 C.F.R. § 825.208 appropriately "filled the gaps" of the FMLA).

This holding is consistent with Sixth Circuit precedent. *See Covucci v. Service Merchandise Co.,* No. 97–4472, 1999 WL 115531 (6th Cir. Feb.8, 1999).[3] In *Covucci,* the plaintiff was fired after missing more than fifteen months of work due to disability leave. Plaintiff argued that because he was never notified that his leave was being treated as FMLA qualifying, he remained eligible for twelve weeks of FMLA leave and, therefore, his termination interfered with his rights under the Act. Interpreting the interim regulations in effect at the time,[4] the Sixth Circuit found that defendant had technically violated the regulations. However, it noted that plaintiff had received far more than the twelve weeks of leave to which he was entitled under the FMLA. The court held that to require the defendant to provide additional leave merely because it failed to specifically code the leave as FMLA leave "would be an egregious elevation of form over substance . . . ." *Id.* at *5. Thus, the court refused to enforce the regulations as written.

■ Plaintiff took forty days of leave related to her MS from February 13 to

---

**3.** Although citation to unpublished Sixth Circuit precedent is disfavored, this case is cited "because it establishes the law governing the present action and there is no published opinion that would serve as well." *Norton v. Parke,* 892 F.2d 476, 479 n. 7 (6th Cir.1989) (citation omitted).

**4.** The interim regulations were substantially similar to the final regulations. Although worded slightly differently, both require the employer to specifically designate leave as FMLA leave and failure to do so prevents the leave from being counted against the employee's FMLA allotment. *Compare* 29 C.F.R. §§ 825.208(c) and 827.700 (1994) *with* 29 C.F.R. §§ 825.208(c) and 825.700 (1998).

August 3, 1996.[5] Since the court has concluded that defendants are entitled to deduct that leave despite their failure to specifically designate it as FMLA leave, twenty days remained in her FMLA reservoir. Taking one day of leave a week, she would have completely depleted her FMLA leave in twenty weeks, or five months. Therefore, the defendants were correct in telling plaintiff that her FMLA leave time would expire in January of 1997. In light of this conclusion, plaintiff cannot show that she forfeited FMLA rights because of a failure on the part of the defendants to properly inform her of her rights under the Act. Summary judgment on her failure to inform claim is granted.

### C. Violation of Defendants' Own Leave Policy

Plaintiff claims that defendants' corporate leave policy allowed for more leave than that provided by the FMLA. Thus, even if her FMLA leave time ran out in January of 1997, she would have had additional time under defendants' own policy. She argues that because the FMLA regulations state that an employer must observe their own leave program when it provides greater benefits than the FMLA, she has a cause of action under the Act. See 29 C.F.R. § 825.700(a).

The court's analysis of this argument results in two holdings. First, although the defendants told plaintiff that the Payroll Clerk position would end when her FMLA leave expired in January of 1997, they told her that she would then be placed on unpaid personal leave until another job was found for her. It appears, therefore, that defendants had every intention of providing her additional leave under their own policies; plaintiff's resignation prevented them from extending her additional leave.

■ Second, it is clear that both the FMLA statute and the regulations encourage employers to maintain leave programs more generous than those required by the FMLA. It is also true that an employer who fails to live up to its obligations under a benefit program may be liable to an employee for breach of contract. However, the court agrees with the conclusion reached by the court in *Rich v. Delta Air Lines,* 921 F.Supp. 767 (N.D.Ga.1996), concerning whether 29 C.F.R. § 825.700 creates a federal cause of action under the FMLA for failure to comply with the employer's own leave policies:

Section 825.700 does not, and could not, however, create a federal cause of action under the FMLA to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA. The Department of Labor has no regulatory power to rewrite, and clearly did not rewrite, the FMLA in such a manner.

The purpose of this regulation is to ensure that the FMLA is not interpreted to abrogate any currently existing employee-benefit plan. Therefore, if an employer has a plan or program more generous than the FMLA, then the FMLA will not supersede or reduce those more generous benefits which the employer has chosen to provide. In essence, the regulation is merely a truism which emphasizes that employers are legally bound by valid contractual agreements made with their employees regarding employment benefits. An employer's contractual obligations are

---

**5.** Nowhere does plaintiff dispute the numbers put forward by defendants. She does, however, mention that July 4 was a holiday. Presumably, she would not have been forced to take leave on that day. Nevertheless, even if plaintiff's leave would have lasted an extra week or two in January or into early February, no reasonable factfinder could conclude that inaccuracy by defendants caused her to forfeit rights under the FMLA. In fact, in regard to how much longer the Payroll Clerk's position would have had to last before plaintiff would have found it acceptable, plaintiff says only that she would have taken the Payroll Clerk's position if it lasted for at least a year.

distinct, however, from the regulation at issue and the FMLA itself.

Because the FMLA itself neither expressly or impliedly gives the Department of Labor the authority to create a federal cause of action based upon a voluntary employee program, any regulations promulgated by the Department creating such a cause of action would be invalid. An executive agency cannot make substantive rules of law unless it has been so empowered by Congress. Consequently, even if the Department of Labor did intend in section 825.700 to authorize a private cause of action under the FMLA, such a regulation would be invalid.

*Id.* at 773–74 (internal citations omitted). Thus, even if plaintiff could show that defendants violated their own leave policy, she could not maintain an action under the FMLA for that violation.

### IV. *Conclusion*

For the foregoing reasons, the defendants' motion for summary judgement on plaintiff's remaining claim under the FMLA is granted; the plaintiff's motion is denied; and the case is dismissed in its entirety.